Filed 2/25/22 Stearns v. Goguen CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| TIMOTHY H. STEARNS, | C083948 |
| Plaintiff and Respondent, | (Super. Ct. No. SCCVCV14500) |
| v. | |
| JAMES GOGUEN et al., | |
| Defendants and Appellants. | |

Plaintiff Timothy H. Stearns sued defendants James Goguen and James Soares for breach of an attorney fee agreement and common counts. Defendants filed a cross-appeal, raising numerous contentions regarding plaintiff's legal representation.

Due to discovery motions and sanctions, defendants were prevented from presenting any evidence against the complaint or in support of their cross-complaint. The trial court granted summary judgment and entered a final judgment in favor of plaintiff.

1

Defendants appeal and appear in pro per. They contend primarily: (1) the trial court lacked subject matter jurisdiction on account of their allegations and defenses; (2) the doctrine of exclusive continuing jurisdiction precluded the trial court from hearing this matter while the case in which plaintiff represented them was pending; (3) the trial court erred in overruling their demurrers to the complaint and to plaintiff's answer to the cross-complaint; (4) plaintiff's discovery motions were not timely served; (5) the trial court erred in granting discovery sanctions; (6) it denied defendants their due process rights; (7) plaintiff's actions voided the attorney fee agreement; and other incidental arguments.

We affirm the judgment.

### FACTS AND HISTORY OF THE PROCEEDINGS

The facts on the merits were undisputed due to the trial court ordering discovery sanctions preventing the defendants from introducing evidence against the complaint or in favor of their cross-complaint. The trial court also deemed the matters specified in plaintiff's request for admissions and the genuineness of the documents specified in the same request for admissions as admitted by the defendants and conclusively established against them for all purposes in this action.

By written agreement, defendants retained plaintiff in 2012 to represent them in the matter of *R-Ranch Property Owners' Assn. v. Bullock*, Super. Ct. Siskiyou County, 2017, No. SCCVCV 12-132 (*Bullock*). Defendants agreed to pay plaintiff for his services at the rate of $250 per hour, and to pay for other services provided by plaintiff's office and for incurred costs. Plaintiff at no time during his representation of defendants agreed to modify or waive his hourly rate or postpone payment. Payment was not contingent on defendants winning the case or any appeal or being awarded attorney fees.

The parties expressly agreed that plaintiff would not provide legal services for any appeal that might occur after the litigation. Representation on appeal required a separate

2

agreement. Plaintiff did not agree to wait for the outcome of an appeal to receive payment for legal services he provided at the trial court level.

*Bullock*, the case for which defendants retained plaintiff, challenged a recall election of certain directors of the R-Ranch Property Owners Association (Association). R-Ranch consists of approximately 5,000 acres of recreational property in northern California owned jointly by the Association's members. The Association is governed by a board of directors. Defendant Goguen and nonparty Art Bullock served as directors of the Association. Both were recalled by the Association's members in a recall election in January 2012 along with two other directors. (*R-Ranch Property Owners' Assn. v. Bullock* (Nov. 28, 2016, C073461) [nonpub. opn.] (*Bullock Appeal I*).)[1] The recall election also rendered ineffective the later appointment of defendant Soares as a board member.

Despite the recall, the recalled directors continued to function as directors. Association members filed a complaint for injunctive relief. The trial court granted a temporary restraining order, enjoining the recalled directors from exercising the authority of a director or officer. (*Bullock Appeal I, supra*.)

Goguen, represented by plaintiff, and Bullock filed cross-complaints against the Association. Of relevance here, the first cause of action in the cross-complaints sought declaratory relief determining the validity of the recall election. Defendants believed the recall election was invalid because R-Ranch allegedly was a common interest development subject to the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq.), and the recall election violated that act's requirements for property owner association elections.

---

[1] The record in the current appeal incorporates by reference the records filed in the following related appeals: C073461, C078092, C078598, and C086537.

3

The parties and the trial court agreed the court would first hold a hearing and take evidence on the first cause of action. After hearing and argument, the trial court ruled on January 28, 2013 that the recall election was valid. On March 9, 2013, Goguen and Bullock filed notices of appeal from the trial court's order. (*Bullock Appeal I, supra.*) We ultimately dismissed *Bullock Appeal I* under the one final judgment rule. (*Bullock Appeal I, supra*.)

Defendants made sporadic payments on the invoices plaintiff sent for representing them in *Bullock*. The last payment they made occurred in July 2013.

On January 8, 2015, the *Bullock* trial court granted plaintiff's motion to withdraw as counsel for Goguen. (*R-Ranch Property Owners' Assn. v. Bullock* (Oct. 13, 2017, C078598) [nonpub. opn.] (*Bullock Appeal II*).) Goguen appealed from that order to the extent it granted plaintiff's motion to withdraw and denied a motion by him to enjoin plaintiff from pursuing the action currently before us. We dismissed the appeal as an appeal from a nonappealable order, and because by then the trial court's judgment in this action mooted the motion for injunctive relief. (*Ibid.*)

The *Bullock* trial court in August 2017 granted a motion for judgment on the pleadings against Goguen and Bullock and entered a final judgment. Goguen has appealed from the judgment. (*R-Ranch Property Owners' Assn. v. Bullock* (C086537) (*Bullock Appeal III*).) That appeal is pending.

1. Pleadings

Plaintiff filed this action against defendants in 2014 for breach of the written retainer agreement and for common counts. As of the filing of the complaint, defendants owed plaintiff $127,532 in fees. Plaintiff sought that amount in damages, plus prejudgment interest and contractual attorney fees.

Defendants filed a demurrer to the complaint. They contended the complaint was uncertain, it failed to state facts sufficient to constitute a cause of action, and the matter

4

was not ripe for adjudication. The trial court overruled the demurrer in its entirety. Defendants answered the complaint and alleged affirmative defenses.

Prior to the trial court's ruling on the demurrer, defendants filed a cross-complaint. The cross-complaint alleged causes of action for fraud, breach of fiduciary duty and the Rules of Professional Conduct, malpractice, breach of contract, and other causes of action against plaintiff. Defendants alleged that plaintiff while representing them in *Bullock* wrongfully did not disclose that in an older case, *R-Ranch Property Owners Assn. v. Lemke* (Aug. 28, 1996, C020577) [nonpub. opn.] (*Lemke*), he argued on behalf of other R-Ranch owners that R-Ranch was *not* a common interest development. Plaintiff did not disclose that he intended to take the same position in *Bullock*, contrary to defendants' directions. Defendants also alleged that plaintiff misrepresented to them the import of *Lemke*.

Plaintiff answered the cross-complaint. Defendants filed a demurrer to plaintiff's answer. The trial court in April 2015 overruled the demurer in its entirety.

### 2. Discovery and discovery motions

Plaintiff served form and special interrogatories on defendants in November 2014. Defendants did not respond.

Plaintiff served requests for admissions on defendants with directions to respond by December 4, 2014. Defendants did not respond.

Plaintiff served notices of deposition on defendants setting their depositions on October 9, 2014. Defendants did not appear at their depositions because the declaration of service was not signed by a nonparty. Plaintiff rescheduled the depositions for December 9, 2014. Goguen did not appear. Soares e-mailed he had a prior appointment but could attend some other date before December 16. When plaintiff asked Soares for alternative dates, Soares did not respond, and the deposition was not rescheduled.

On December 11, 2014, plaintiff filed motions to deem the truth of matters and genuineness of documents specified in the requests for admissions as admitted by and conclusively established against both defendants; to compel answers to the interrogatories; and to compel defendants to appear and testify at their depositions. Plaintiff also set defendants' depositions for January 7, 2015.

In response, defendants filed a motion for preliminary injunction and stay of proceedings. They sought to enjoin plaintiff from prosecuting the action and conducting any type of discovery. They contended among other things that the *Bullock* trial court had exclusive concurrent jurisdiction over the matter while *Bullock Appeal I* was pending, and that the issues in this case could not be resolved until *Bullock Appeal I* was decided. Defendants also opposed plaintiff's discovery motions, asserting the trial court lacked jurisdiction to hear them due to untimely service and other reasons.

Defendants did not appear for their depositions scheduled for January 7, 2015. Plaintiff noticed their depositions for February 10, 2015. Defendants again did not appear.

The trial court agreed that plaintiff had not served his discovery motions within the time requirements imposed by Code of Civil Procedure section 1005, subdivision (b). The court continued the hearing date. It did not order plaintiff to serve the motions again.

On March 5, 2015, the trial court denied defendants' motion for preliminary injunction and stay as to Soares. It granted plaintiff's motions to compel Soares to answer interrogatories and appear at his deposition. The court also granted plaintiff's motion to deem the requests for admissions and documents that were propounded on Soares to be admitted and established. The court also awarded plaintiff monetary sanctions for reporting fees. The court continued the pending motions as to Goguen. Goguen had reported to the court that he suffered a stroke and a heart attack in January 2015.

6

Soares provided answers to interrogatories in April 2015. Responding to the form interrogatories, other than to provide identifying information, he wrote, "I don't know how to answer this question." To the special interrogatories, he wrote, "I don't know how to respond to this special interrogatory." Soares appeared at his court-ordered deposition on May 19, 2015.

On June 11, 2015, the trial court denied defendants' motion for a preliminary injunction as to Goguen, and it granted plaintiff's motions to compel Goguen to answer interrogatories and to deem the truth of admissions and genuineness of all documents in the request for admission as admitted and established as against Goguen. The court also awarded monetary sanctions in the sum of the filing fee. The court continued the motion to compel Goguen to attend his deposition to June 18, 2015, and ordered him to submit documentation from his physician of his ability to participate in the case.

On June 18, 2015, the trial court granted the motion to compel Goguen to be deposed, and it ordered Goguen to participate in a deposition scheduled to begin June 22, 2015. The court would consider rescheduling the deposition if it received documentation from Goguen's licensed physician that participation would be detrimental to Goguen's health.

On June 19, 2015, Goguen filed a motion for a protective order, preliminary injunction, and stay of proceedings until he had recovered from heart surgery. The motion included letters from a medical clinic recommending a stay. Goguen did not attend the deposition set for June 22, 2015. On June 29, 2015, he filed with the court a letter from his cardiologist explaining his medical condition and requesting a 90-day stay. On July 30, 2015, the trial court granted Goguen's motion to stay proceedings, and it continued the motion to September 24, 2015.

Meanwhile, Goguen submitted answers to the interrogatories on or about July 8, 2015. Other than to provide identifying information, Goguen responded to form interrogatories by stating, "I don't know how to answer this question." He responded to

7

all special interrogatories by stating, "I don't know how to respond to this special interrogatory."

3. Order to show cause and discovery sanctions

Plaintiff learned that Goguen was attempting to sell rental property he owned in Oregon prior to trial. It was property to which Goguen had promised to give plaintiff a deed of trust to secure payment of attorney fees. On August 3, 2015, plaintiff filed a motion for an order maintaining the status quo and enjoining Goguen from selling the property. Knowing the motion was forthcoming, the trial court had excepted it from the stay. The court granted the motion and enjoined Goguen from proceeding in the sale or transfer of any property, including the rental property in Oregon, and to maintain the status quo of all real property in which he held an interest.

Along with granting the motion to maintain the status quo, the trial court continued Goguen's stay of proceedings, ultimately to November 5, 2015. The court advised Goguen that further stays could not continue.

On October 30, 2015, plaintiff filed a motion for order to show cause why defendants should not be held in contempt and for monetary sanctions. Goguen sold his Oregon property in violation of the trial court's order. He also did not appear for his deposition on June 22, 2015, as the court had ordered. He and Soares also had not paid the monetary sanctions imposed on them in previous orders.

Also on October 30, 2015, plaintiff filed a motion for discovery sanctions, including terminating or evidence exclusion sanctions, and for monetary sanctions. Plaintiff argued that defendants had thwarted discovery by their inadequate answers to interrogatories and not appearing at scheduled depositions, including Goguen's not appearing after being compelled to do so.

The trial court granted plaintiff's ex parte motion to hear the motions on shortened time. It issued an order to show cause, and it ordered that any funds from the sale of

8

Goguen's property were to be placed in a blocked account pending further court order. Three days later, on November 5, 2015, the court lifted the stay of proceedings as to Goguen.

The trial court set the hearing on plaintiff's motions for November 19, 2015. On November 16, 2015, defendants notified the court they would not appear at the November 19 hearing. Soares also notified the court that Goguen had filed for Chapter 13 bankruptcy and the proceedings in this matter were automatically stayed. Goguen later filed a copy of the notice of commencement of his Chapter 13 bankruptcy case.

On November 30, 2015, the trial court granted plaintiff's motion for discovery sanctions against Soares and excluded from trial all evidence from Soares opposing the complaint and supporting affirmative defenses and the cross-complaint. Two days later, on December 2, 2015, Soares filed for Chapter 13 bankruptcy and filed a notice of stay with the trial court.

In January 2016, the bankruptcy court dismissed Soares's bankruptcy filing and granted plaintiff relief from the debtor stay in Goguen's bankruptcy. The trial court reset the hearing on plaintiff's motions for order to show cause and for discovery sanctions against Goguen. In response, Goguen filed a motion to quash service of the motions, alleging inadequate service.

At the hearing, the trial court ruled that the order to show cause had been improperly served. Plaintiff requested the court set aside the order to show cause and proceed on the remaining motions. The trial court did so. It also denied the motion to quash. It extended Goguen's time to file an opposition to the discovery sanctions motion.

Goguen filed an opposition. He also filed a motion to reopen discovery and "an assertion and memorandum" contending the trial court lacked subject matter jurisdiction to hear the complaint because he was still plaintiff's client when plaintiff filed the action.

On May 19, 2016, the trial court granted the motion for discovery sanctions against Goguen that mirrored those against Soares, prohibiting him from introducing any

9

evidence supporting or opposing the complaint and cross-complaint or his affirmative defenses. The court stated that in addition to thwarting discovery, Goguen did not comply with the court's order to deposit proceeds from the sale of his property in a blocked account. The court also denied Goguen's motion to reopen discovery and his objection to the court's jurisdiction.

4.  Summary judgment

At a pre-voir dire conference on May 26, 2016, the trial court stated it had read through the admissions that had been deemed admitted and accurate and could not find anything that could be decided by a jury. This eliminated defendants' affirmative defenses. Also, because of the evidentiary sanctions imposed, the cross complaint was no longer in issue. Plaintiff requested and received a continuance to file a motion for summary judgment.

Plaintiff filed his motion for summary judgment the next day. The trial court granted the motion on November 10, 2016. The judgment awarded plaintiff $155,790.20 plus costs.

DISCUSSION

I

*Subject Matter Jurisdiction*

Defendants assert the trial court did not have subject matter jurisdiction to hear this matter. They allege throughout their opening brief that plaintiff violated various rules of professional conduct and common law duties in representing them in *Bullock*, and that these violations not only voided the attorney fee agreement but also divested the trial court of subject matter jurisdiction. Defendants also claim the court lacked subject matter jurisdiction because they allegedly are still plaintiff's clients, and an attorney

10

cannot sue his or her current clients. (See *Santa Clara County Counsel Attorneys Assn v. Woodside* (1994) 7 Cal.4th 525, 548-549 [dictim].)

Plaintiff argues we should strike these arguments from defendants' briefs as they were not included in the trial court record. Challenges to subject matter jurisdiction, however, may be raised at any time, including for the first time on appeal. (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 807.)

Defendants misunderstand the doctrine of subject matter jurisdiction. A court's subject matter jurisdiction is, in short, the court's authority to resolve a legal dispute. "Generally, subject matter jurisdiction is the court's power to hear and resolve a particular dispute or cause of action . . . ." (*Donaldson v. National Marine, Inc*. (2005) 35 Cal.4th 503, 512.) A lack of subject matter jurisdiction is the entire absence of power to hear or determine a case. (*Quigley v. Garden Valley Fire Protection Dist., supra*, 7 Cal.5th at p. 807, quotation marks omitted.)

The California Constitution confers broad subject matter jurisdiction on the superior court. (Cal. Const., art. VI, § 10.) Included in that jurisdiction is the authority to resolve causes of action for breach of contract and common counts such as the causes alleged here. (See *E.I. Noxon Const. Co. v. Wallace Process Piping Co.* (1961) 191 Cal.App.2d 651, 654-655 [superior court has jurisdiction to hear action by contractor against subcontractor for breach of contract].)

Assuming without establishing that their factual allegations are true, defendants mistakenly claim that the alleged merits of their defenses to the complaint and their allegations of the cross-complaint deprive the trial court of jurisdiction. They have it backwards. It is the court's jurisdiction that allows the court to hear and resolve their defenses and allegations. The court does not lose subject matter jurisdiction should defendants prevail on their factual defenses. And, of course, defendants did not prevail on their defenses and allegations, as they were barred from introducing any evidence to support them.

11

Even if defendants' factual allegations were true, which the trial court determined they were not, they would not establish that the trial court lacked subject matter jurisdiction.  Defendants cite no authority for the proposition that a court loses subject matter jurisdiction in an action for breach of an attorney fee agreement if the attorney violated rules of professional conduct during the representation.  The case on which defendants primarily rely, *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, stands for the proposition that an attorney's violation of a rule of professional conduct in the formation of an attorney fee agreement may render the agreement unenforceable.  (*Id*. at p. 87.)  The case does not stand for the proposition that the attorney's unethical conduct deprives the trial court of jurisdiction to determine whether the fee agreement is enforceable.

The case on which defendants primarily rely to claim the court has no jurisdiction if plaintiff sued his current clients, *Osborn v. Hopkins* (1911) 160 Cal. 501, also does not help defendants.  In dicta in that case, the California Supreme Court stated that an action on an attorney fee contract would be subject to an objection for failure to state a claim if the attorney brought the action while still representing the client.  (*Id*. at pp. 505-506.)  However, "[t]he fact that a complaint or other pleading fails to state a cause of action does *not* deprive the court of jurisdiction of the subject matter or of jurisdiction to give the particular relief sought."  (2 Witkin, Cal. Procedure (6th ed. 2021) Jurisdiction, § 304, italics added.)

The trial court did not at any time lose subject matter jurisdiction to decide this action on account of defendants' allegations and defenses, none of which were established.

12

II

*Exclusive Concurrent Jurisdiction*

Defendants contend the trial court erred when it denied their motion to stay proceedings based on the *Bullock* court having exclusive concurrent jurisdiction. They also claim we lack jurisdiction to hear this appeal because "the *Bullock* CoA [court of appeal, which is this court] has exclusive concurrent jurisdiction over *Stearns*."

"The established rule of exclusive concurrent jurisdiction provides that where two or more courts possess concurrent subject matter jurisdiction over a cause, the court that first asserts jurisdiction assumes it to the exclusion of all other courts. In essence, the rule renders concurrent jurisdiction exclusive with the first court." (*County of Siskiyou v. Superior Court* (2013) 217 Cal.App.4th 83, 89 (*County of Siskiyou*).)

The rule "is meant to avoid the spectacle of the same parties litigating the same issues in two different courts at the same time, including the real possibility of 'unseemly conflict between courts that might arise if they were free to make contradictory decisions or awards at the same time or relating to the same controversy; another reason is to protect litigants from the expense and harassment of multiple litigation.' [Citation.]" (*Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2000) 85 Cal.App.4th 1168, 1176 (*Franklin & Franklin*).)

For the rule of exclusive concurrent jurisdiction to apply, "although the parties in the two actions and the remedies sought need not be precisely the same, the issues in the two proceedings must be substantially the same and the individual suits must have the potential to result in conflicting judgments." (*County of Siskiyou, supra*, 217 Cal.App.4th at p. 91.) A trial court's determination of exclusive concurrent jurisdiction is a matter for its discretion. (See *Franklin & Franklin, supra*, 85 Cal.App.4th at p. 1173.)

Despite defendants' nomenclature, the issue before us is not one of exclusive concurrent jurisdiction. A priority problem triggers exclusive concurrent jurisdiction

when two actions involving similar parties and issues are brought in *different superior courts*. If two actions involving similar issues are brought in the same superior court, "the problem is not one of jurisdiction but of pleading and trial practice." (2 Witkin, Cal. Procedure, *supra*, Jurisdiction, § 442.) The superior court in which both actions are filed has jurisdiction to decide both cases. (*Ibid*.)

"There is but one superior court in the county . . . and all actions brought in that county are within the same jurisdiction. [Citation.] An issue of priority of jurisdiction arises only when two actions are brought in different courts [citation], such as in superior courts in different counties [citations], or different courts in the same county [citation], or where there is a single action in which two departments of the superior court are asserting jurisdiction [citations]." (*Mobil Oil Corp. v. Superior Court* (1978) 79 Cal.App.3d 486, 492-493.)

As an example of an issue of priority that may arise between two departments of a superior court, an issue of priority exists when a marital dissolution action in a county's family court concerns the division of community property, and a third party files an action in the same county's civil court to enforce its interest in the community property. In that circumstance, the family court has priority of jurisdiction, and the third party should be joined to that action. A threat of multiple actions and inconsistent verdicts could undermine the family court's ability to characterize and dispose of community property. (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1456.) This example does not reflect the case before us, as *Bullock* and this action were both brought in the same county civil court. The doctrine of exclusive concurrent jurisdiction does not apply to this case.

Where two actions are brought in the same superior court, "[t]he only problems are: (a) *Pleading:* does the plea of the other action pending lie, so as to abate the second action? The answer is no, because the parties are not in the same relationship. (b) *Trial*

*practice:* should the two actions be consolidated for trial?" (2 Witkin, Cal. Procedure, *supra*, Jurisdiction, § 442.)

Addressing the first question, pleading, we conclude the record before us shows that this action should not have been abated due the pendency of *Bullock*. The pendency of a first action may result in the abatement of a second action where a judgement for the defendant in the first action would be a complete bar to the second action. Under this test, if the primary rights sued upon and the parties in both actions are the same, the second action will be abated. (*Wulfjen v. Dolton* (1944) 24 Cal.2d 891, 896; 5 Witkin, Cal. Procedure (6th ed. 2021) Pleading, § 1183.)

This case would not be abated under that test. The primary rights sued upon in *Bullock* and this case and the parties in both cases are not the same. In *Bullock*, the Association sued Goguen and others to enjoin them from continuing to act as directors after they had been recalled. Goguen and Bullock cross-complained based on their contention they had been wrongly recalled. (*Bullock Appeal 1, supra*.) Plaintiff Stearns and defendant Soares were not parties in *Bullock*, and plaintiff's representation of Goguen is not at issue in *Bullock*.

This action concerns different primary rights and different parties. In this action, plaintiff sued upon the violation of his contractual right to be compensated by defendants for his legal services for them in *Bullock*. Defendants cross-complained based on their allegations of fraud, malpractice, breach of contract, and violations of fiduciary and ethical duties plaintiff owed them while representing them in *Bullock*. The Association and Bullock are not parties in this action, and the contested recall election is not at issue in this action.

The two actions cannot result in inconsistent verdicts. *Bullock* provided no remedy for plaintiff to recover on his primary right of breach of contract, and a judgment in *Bullock* would not bar plaintiff from suing on the fee agreement. Plaintiff's cause of action lies no matter the verdict in *Bullock*. Moreover, neither action affects the trial

15

court's ability to decide the other action. The *Bullock* court retained the authority and ability to determine the validity of the recall election no matter whether defendants or plaintiff breached the fee agreement.

Defendants contend *Bullock* and this case concern the same issue triggering principles of res judicata and potentially resulting in contradictory decisions. They assert the same issue in both cases is: "Are attorneys . . . violating [rules of professional conduct] to relitigate estopped issues, under conflicts of interest . . . by deceptively arguing contrary to prior [trial court] decisions?"

That is not an issue that was decided in *Bullock*. The record before us includes the *Bullock* trial court's final judgment. The trial court in that matter determined the recall election was valid, the appointment of replacement directors after the election was valid, and R-Ranch is not a common interest development under the Davis-Stirling Act and subject to its rules governing owner association elections. (*Bullock Appeal III, supra*, Judgment.) Whether plaintiff committed some form of malpractice in his representing defendants in *Bullock* was not an issue decided by that court. Similarly, a final judgment in this case on the enforceability of the attorney fee agreement will not conflict with *Bullock*. There will be no contradictory decisions.

This conclusion answers the second question to consider when two cases are filed in the same court, consolidation. A court may order actions consolidated when those actions involve a common question of law or fact. (Code Civ. Proc., § 1048, subd. (a).) Given the different legal and factual issues between this case and *Bullock*, the trial court would have been well within its discretion not to consolidate the two cases.

Defendants' reliance on *Franklin & Franklin* to assert exclusive continuing jurisdiction prevented the trial court from hearing this matter is misplaced. That case's holding is limited to its facts, which are distinguishable from the facts before us. In that case, 7-Eleven franchisees brought a class action in Alameda County against their franchiser. During the litigation, the class representatives discharged the appellants as

16

class counsel, and the remaining cocounsel successfully settled the litigation. The trial court approved the settlement and awarded attorney fees to both sets of attorneys. (*Franklin & Franklin, supra*, 85 Cal.App.4th at p. 1171.)

Former counsel filed a separate action in San Diego County. They alleged breach of contract against their former clients and breach of fiduciary duties by their cocounsel, resulting in former counsel not recovering fair and reasonable attorney fees in the class action. (*Franklin & Franklin, supra*, 85 Cal.App.4th at pp. 1171-1172.) Although an appeal from the Alameda County court's judgment was pending, cocounsel petitioned the Alameda County trial court for injunctive relief to restrain former counsel from prosecuting the San Diego County action. The Alameda County court issued a preliminary injunction. (*Ibid.*)

Former counsel appealed the grant of injunctive relief. The court of appeal affirmed the order. It held that the Alameda County court did not violate the statutory stay of trial proceedings while an appeal is pending by hearing the petition, and, of importance here, that the Alameda County court had exclusive continuing jurisdiction to issue the injunction. (*Franklin & Franklin, supra*, 85 Cal.App.4th at pp. 1175-1178.) The attorney fees award sought in the second action in San Diego County challenged the same attorney fees award made as part of the settlement which was approved in the first action in Alameda County and was being reviewed on appeal. A judgment in the second action could have threatened the first judgment and possibly rendered the appeal futile. Thus, the first trial court did not abuse its discretion in asserting exclusive continuing jurisdiction. (*Id.* at pp. 1173, 1177-1178.)

In contrast to *Franklin & Franklin*, *Bullock* and this case were brought in the same court and did not concern the same issues or parties. *Bullock* concerns the validity of the recall election. This case concerns a breach of an attorney fee contract. A judgment in this action will not threaten the judgment in the earlier-filed *Bullock* or risk rendering the current appeal from that judgment futile. The trial court did not err in denying a stay of

17

proceedings based on finding that the rule of exclusive concurrent jurisdiction did not apply to this case. For the same reasons, the doctrine of exclusive concurrent jurisdiction does not apply to this court's review of Goguen's pending appeals.

III

*Demurrers*

Defendants contend the trial court erred by overruling their demurrer to the complaint. They claim the court erred because (1) it cannot be ascertained from the complaint whether the attorney fee contract is written, oral or implied; (2) the complaint was vague and uncertain for the same reason; (3) the complaint does not allege facts sufficient to state a cause of action; and (4) the trial court denied Goguen his due process right to speak when the hearing on the demurrer was scheduled.

Defendants also assert the trial court erred by overruling their demurrer to plaintiff's answer to the cross-complaint for the same reasons. Our reasoning on the demurrer to the complaint applies equally to the demurrer to plaintiff's answer to the cross-complaint without further elaboration.

We review an order overruling a demurrer de novo. (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182.) We accept as true all material facts properly pleaded in the complaint, and we consider facts that may be judicially noticed. We do not accept as true contentions, deductions, or conclusions of law. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.)

A demurrer "looks *only* to the face of the pleadings and to matters judicially noticeable and not to the evidence or other extrinsic matter." (*Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 239, fn. 2.) "At this stage in the proceedings, we are concerned only with whether a plaintiff has stated a hypothetical case; whether or not

18

it can be proven is beyond our review." (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 962.)

A.      Nature of alleged contract

When an action is "founded upon a contract," the complaint is subject to demurrer if "it cannot be ascertained from the pleading whether the contract is written, is oral, or is implied by conduct." (Code Civ. Proc., § 430.10, subd. (g).)  Defendants contend they cannot ascertain from the complaint whether the contract was written or oral.  They acknowledge the complaint states that the action is based on a breach of a written contract and that a written contract was attached to the complaint.  However, section 24 of the contract states the agreement may be modified by an oral agreement between the parties to the extent the parties carry it out.  Defendants claim that without those oral modifications or some allegation in the complaint as to whether any oral modifications were made, we cannot ascertain whether the alleged breach is governed by a written provision or an oral modification.

Defendants are plainly wrong.  That the contract authorized oral modifications does not mean or imply that any were made.  For plaintiff to recover on any oral modifications, he would have to allege them.  He did not.  Thus, defendants on demurrer have no grounds to assert that any oral modifications may have been made or to demand plaintiff to allege as much, as such a factual contention is not within the face of the complaint and is thus outside the scope of a demurrer.

Using the Judicial Council complaint for breach of contract, plaintiff successfully pleaded an action for breach of a written contract.  He alleged (1) the parties entered into a written agreement; (2) plaintiff performed his obligations under the agreement; (3) defendants breached the agreement by failing to pay the sums due under the agreement; and (4) plaintiff suffered damages as a result of the breach.  He also attached a copy of the written agreement to the complaint.  (See *Miles v. Deutsche Bank National Trust Co.*

19

(2015) 236 Cal.App.4th 394, 402 [elements of breach of written contract].)  From these allegations, we can ascertain that the breached contract was written.  (See *Maxwell v. Dolezal* (2014) 231 Cal.App.4th 93, 98-99 [allegation in the complaint that the parties entered into a written agreement is sufficient to survive a demurrer under Code of Civil Procedure, § 430.10, subdivision (g)].)  The trial court did not err in reaching the same conclusion.

### B.  Uncertainty

A demurrer will lie if the pleading is uncertain, ambiguous, or unintelligible. (Code Civ. Proc., § 430.10, subd. (f).)  Defendants claim the complaint is vague and uncertain because it does not specify whether any modifications were made to the agreement.  Defendants contend that parts of the written agreement were superseded by oral modifications not mentioned in the complaint.  Defendants assert it is a "question of law on undisputed facts whether a contract without its referenced subsequent oral modifications" is vague and uncertain.

Demurrers for uncertainty are disfavored.  (*Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 822.)  "A demurrer for uncertainty is strictly construed, even where a complaint is in some respects uncertain, because ambiguities can be clarified under modern discovery procedures."  (*Khoury v. Maly's of California, Inc*. (1993) 14 Cal.App.4th 612, 616.)  "A demurrer for uncertainty should be overruled when the facts as to which the complaint is uncertain are presumptively within the defendant's knowledge."  (*Chen v. Berenjian, supra*, 33 Cal.App.5th at p. 822.)

Defendants attempt to create an uncertainty where none exists.  The complaint is not uncertain or vague about the nature of the contract for the same reasons we set forth in the previous section.  The complaint pleaded only a breach of a written agreement.  If any relevant oral modifications were actually made to the agreement where none were alleged, defendants would know that, and they would bear the burden of establishing that

20

fact through discovery and at evidentiary hearings. We do not consider such factual contentions and defenses on demurrer.

Where a complaint is sufficient to state a cause of action and to apprise a defendant of the issues he or she is to meet, it is not subject to a special demurrer for uncertainty. (*People v. Taliaferro* (1957) 149 Cal.App.2d 822, 824-825, disapproved on another ground in *Jefferson v. J. E. French Co.* (1960) 54 Cal.2d 717, 720.) The trial court did not err in overruling the demurrer on the complaint's alleged uncertainty.

C. General demurrer

Defendants contend the complaint failed to state a cause of action because the controversy was not yet ripe. They claim it was not ripe because (1) an attorney cannot sue for fees while representing a client in the action for which fees are alleged, and plaintiff did not allege that he no longer represented defendants in *Bullock* when he brought this action; and (2) an attorney cannot sue current or former clients in a collateral suit for fees while the case in which the fees were earned is pending, and *Bullock* had not reached a final judgment when plaintiff sued for fees. Defendants also assert that plaintiff had multiple undisclosed conflicts of interest, and these undisclosed ethical violations constituted insufficient facts to state a cause of action.

1. Suing existing client

Under the Rules of Professional Conduct, an attorney's duty of loyalty to a client prohibits the attorney from suing a client for fees whom the attorney still represents. (See *Santa Clara County Counsel Attorneys Assn v. Woodside, supra*, 7 Cal.4th at pp. 548-549; Cal. Rules of Prof. Conduct, rules 1.16(b)(5), 1.7.) However, defendants cite to no authority that would require an attorney in an action to recover unpaid fees to allege affirmatively that his or her representation of the client has ended. The claim is akin to an affirmative defense, and the truth of the claim would require a resolution of facts, something a demurrer generally does not authorize a trial court to perform.

21

However, even if the allegation should have been made, the trial court's overruling the demurrer on this point was not prejudicial error. When the trial court ruled on defendants' demurrer to plaintiff's answer to the cross-complaint, it determined as a matter of law that plaintiff did not represent defendants when he filed the complaint or any time thereafter. The trial court rested its ruling on matters it judicially noticed on its own motion. After defendants filed their notice of appeal in *Bullock Appeal I* on March 29, 2013, thereby staying trial court proceedings: (1) Goguen filed a substitution of attorneys in *Bullock* in August 2013, substituting Rebecca Moore as his attorney of record in place of himself as pro per litigant; (2) plaintiff filed this action on April 18, 2014; (3) Goguen filed a second substitution of attorneys in *Bullock* in September 2014 substituting James Johnson as his attorney of record in place of himself as pro per litigant; (4) plaintiff filed his motion to be relieved as counsel in November 2014 "[o]ut of an abundance of caution;" and (5) the *Bullock* court granted that motion on January 8, 2015.

From these undisputed facts, the trial court concluded, "Mr. Stearns no longer represents Mr. Goguen nor did he represent Mr. Goguen at the time of filing the complaint that initiated the present case." Thus, any error in overruling defendants' demurrer to the complaint where plaintiff did not allege that he no longer represented defendants in *Bullock* was not prejudicial. The trial court effectively inferred that the allegation was in the complaint.

### 2. Suing former client before action is final

Defendants argue that *Franklin & Franklin, supra*, 85 Cal.App.4th 1168, prohibits an attorney from suing a former client for unpaid fees until the action in which the attorney represented the client has reached a final judgment. Defendants again misread *Franklin & Franklin*. The relevant distinction between *Franklin & Franklin* and the case before us as to defendants' argument on demurrer is that in *Franklin & Franklin*, the

22

issue sued upon in the second action was still pending in the first action. The second action thus interfered with the first action's continuing exclusive jurisdiction. Nowhere did *Franklin & Franklin* hold that an attorney could not sue his or her former client for breach of an attorney fee agreement until the matter in which the attorney had represented the former client was final where the attorney's suit did not interfere with the pending action's continuing exclusive jurisdiction, such as the case here. In other words, contrary to defendants' argument, the mere existence of the pending action after representation has ended does not by itself prohibit the attorney from suing on the attorney fee agreement.

Nothing in *Bullock* concerned the validity or amount of attorney fees defendants owe plaintiff. The case's pendency thus did not prohibit plaintiff from suing defendants in a new action for breach of the attorney fee agreement. The trial court did not error in overruling the demurrer on this point.

3.    Undisclosed conflicts of interest

Defendants contend that plaintiff had multiple undisclosed conflicts of interest in violation of the Rules of Professional Conduct, and that these undisclosed conflicts constituted insufficient facts.

Whether plaintiff had any conflicts of interest was an affirmative defense and issue of fact that could not be addressed on demurrer. Moreover, conflicts of interest do not automatically bar suits to recover attorney fees. "California law does *not* establish a bright-line rule barring all compensation for services performed subject to an improperly waived conflict of interest, no matter the circumstances surrounding the violation." (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc., supra*, 6 Cal.5th at p. 89, italics added.) The trial court did not err in overruling the demurrer on this point.

23

D.    Due process in setting hearing on demurrer

Goguen asserts he was denied his due process right to speak at a case management conference on November 18, 2014, where the hearing on the demurrer was set.  He claims he was not given the opportunity to tell the court he had a schedule conflict on the day plaintiff had scheduled the demurrer to be heard and that the trial court lacked subject matter jurisdiction to hear the demurrer.  Goguen contends the trial court's denying him the opportunity to speak violated his due process rights.

The record before us, however, contains no evidence to support the defendants' allegations of the trial court's actions at the case management conference.  As factual support for their contention, defendants cite to a points and authorities they filed with the trial court the day before the demurrer hearing in which they alleged the court had denied Goguen an opportunity to speak at the case management conference.  That points and authorities, however, was not a declaration of fact made under penalty of perjury.  It thus consists only of argument, and attorneys' arguments are not facts.  (See *Smith v. Covell* (1980) 100 Cal.App.3d 947, 960.)

The points and authorities also claim that facts for the case management conference were included in another points and authorities defendants filed with the trial court in support of the demurrer.  The second points and authorities, however, does not mention the case management conference.  And the docket notes included in the record for the case management conference do not reference any refusal by the trial court to let Goguen speak at the conference.

The record includes a settled statement approved by the trial court on June 11, 2015, following its overruling of defendants' demurrer to plaintiff's answer to the cross complaint.  This statement does not mention the case management conference.

The parties sought another settled statement after the trial court awarded summary judgment.  Plaintiff contends the trial court settled the statement, but defendants contend

it did not.  The dispute is irrelevant on this point because neither the settled statement proposed by defendants nor the statement purportedly approved by the trial court discusses the trial court's refusal to allow Goguen to speak at the November 18 management conference.

Because defendants do not direct us to any evidence in the record in support of their contention, the contention is forfeited.  (*In re S.C.* (2006) 138 Cal.App.4th 396, 414 [claims not supported in the appellate record need not be addressed].)

IV

*Discovery Motions*

Defendants contend the trial court erred in granting plaintiff's discovery motions—the motion to deem the requests for admission and the genuineness of requested documents admitted and the motions to compel answers to interrogatories and attendance at depositions—and thus erred in relying upon them in granting the discovery sanctions.  They claim the motions were not timely served, and the trial court should have required them to be served again.  Not requiring the motions to be timely served deprived the trial court of jurisdiction to entertain the motions and, subsequently, denied the court of authority to rely on the motions to grant discovery sanctions and summary judgment.

Plaintiff asks us to strike the portions of defendants' briefs on this argument or disregard them because he claims the assertions, references and arguments were not part of the trial court record.  We disagree.  Defendants filed written oppositions that made the arguments they make here.  Goguen also argued at the first hearing that the motions had not been served timely and contended the improper service rendered them void.

A.    Background

Plaintiff served the motions to deem the requests for admissions and genuineness of documents admitted and to compel answers to interrogatories as against both defendants by mail on December 10, 2014, noticing the hearing on the motions for

25

January 8, 2015. Plaintiff served the motions to compel Soares and Goguen to be deposed by mail on December 11, 2014, again noticing the hearings for January 8, 2015.

Despite being served by mail, the motion to compel Goguen to be deposed was not filed with the trial court. Plaintiff filed a second motion to compel Goguen to be deposed on December 31, 2014, and set the hearing on that motion for February 5, 2015.

Defendants filed an opposition against all four motions on December 24, 2014. They claimed the trial court lacked jurisdiction to hear the motions because they had not been served timely as required by Code of Civil Procedure section 1005, subdivision (b), i.e., the time between the motions' service and the scheduled hearing date was statutorily insufficient. They argued that continuing the hearing would not cure the service defect.

Defendants also opposed the motions on additional grounds. They argued the court lacked jurisdiction to hear not just the discovery motions, but also the entire action based among other things on the defenses and allegations they would raise in their answer and cross-complaint: plaintiff was suing his current clients in violation of California law and the Rules of Professional Conduct, the *Bullock* trial court had exclusive concurrent jurisdiction, an appeal in *Bullock* was pending and thereby staying proceedings in this action, and also defendants had filed an appeal in this matter upon the trial court granting plaintiff a temporary restraining order as part of a writ of attachment against Soares. (We ultimately dismissed that appeal. (*Stearns v. Goguen* (Mar. 7, 2016, C078092).))

At the hearing on January 8, 2015, the trial court agreed with defendants that plaintiff had not served the motions within the time requirements imposed by Code of Civil Procedure section 1005, subdivision (b). The court indicated that plaintiff would still need to accomplish service timely, and it asked him what he wanted to do with time. Plaintiff stated the motions had already been served on December 10. The court continued the hearing to January 22, 2015. It did not order plaintiff to serve the motions again.

26

Prior to the continued hearing, defendants filed a second opposition to all four of the discovery motions. They again claimed the trial court lacked jurisdiction to hear the motions due to the noticing error, and it lacked jurisdiction to continue the hearing to correct the error for the same reason. Defendants also raised the same additional arguments on the merits of the action which they had raised before as additional grounds for denying the discovery motions.

Also prior to the continued hearing, defendants filed a motion to continue all scheduled hearings and depositions due to Goguen's health. Goguen had been hospitalized while preparing for the January 22 hearing for neurological problems. Defendants set the hearing on this motion for March 5. At a case management conference days later, Goguen declared he had suffered a stroke on January 18, 2015, and a heart attack on January 25, 2015. He also submitted letters signed by a nurse practitioner regarding his health.

Due to continuances, the discovery motions were not heard until March 5, 2015, along with the motion for continuance. The trial court granted each of the discovery motions against Soares, but it continued the hearing on the motions as to Goguen to June 11, 2015, including the motion to compel him to be deposed. Soares was present at the hearing. Goguen was not present but Soares presented a declaration to the court from Goguen requesting a continuance.

At the June 11 hearing, the trial court granted as against Goguen the motion to deem the requests for admissions admitted and the motion to compel answers to interrogatories. It continued the hearing on the motion to compel Goguen to appear at his deposition until June 18, 2015, and it ordered Goguen to submit documentation from his physician as to his ability to participate in the case. Counsel James Johnson was present at the June 11 hearing on behalf of Goguen.

At the June 18 hearing, attorney Johnson submitted a memo from a medical clinic regarding Goguen's treatment. The trial court ordered Goguen to participate in his

deposition scheduled for June 22, 2015.  However, if Goguen submitted documentation from his licensed physician no later than 9:00 a.m. June 22, the court would consider rescheduling the deposition.  The court limited the deposition to two hours per day with any necessary breaks.

On June 19, 2015, Goguen filed a motion for a protective order, preliminary injunction, and a stay, and set a hearing for July 30, 2015.

Goguen did not appear at his scheduled deposition.  On June 29, 2015, he submitted a letter from his cardiologist, who requested a 90-day continuance.  On July 30, 2015, the court granted Goguen a stay of proceedings.

B.    Analysis

Code of Civil Procedure section 1005 requires that a notice of motion be served and filed at least 16 court days before the noticed hearing.  (Code Civ. Proc., § 1005, subd. (b).)  If service is by mail, the 16-court-day period is increased by five calendar days if the place of mailing and the place of address are within California, and by 10 calendar days if either the place of mailing or the place of address are outside California but within the United States.  (*Ibid*.)

Counting backward from the proposed hearing dates, as we are required to do (Code of Civ. Proc., § 12c), for the first hearing on the motions held on January 8, 2015, the motion papers had to be mailed to Soares, who lives in California, no later than December 10, 2014, and to Goguen, who lives in Oregon, no later than December 5, 2014.  For the hearing to be held on February 5, 2015, on the motion to compel Goguen to be deposed, the motion had to be mailed to Goguen no later than January 2, 2015.  (We take judicial notice of the 2014 and 2015 court calendars.  (Evid. Code, §§ 452, subd. (h); 459, subd. (a).)

Service of the motions against Soares to deem the requested admissions admitted and to compel answers to interrogatories was timely, as they were served on

28

December 10.  Service of the motion to compel Soares to be deposed was not timely; it was one day short of the required time, having been served on December 11.

Service of the motions against Goguen to deem the requested admissions admitted and to compel answers to interrogatories was not timely, as they were served after December 5, 2014.  Service of the motion on December 11 to compel Goguen to be deposed was also untimely for the January 8, 2015 hearing.  However, because the hearing on this motion was re-noticed for February 5, 2015, service of this motion on December 11 and filing it on December 31, 2014, was timely when counting days from the date of filing.

For those motions not timely served, defendants contend the trial court did not have jurisdiction to correct the error by continuing the hearing to a later date, and it erred in not requiring plaintiff to serve the motions again.

In general, "[s]uccessful service by mail requires strict compliance with all statutory requirements . . .; the failure to comply deprives a court of jurisdiction to act." (*Lee v. Placer Title Co.* (1994) 28 Cal.App.4th 503, 509.)  Nonetheless, defects in service or notice of motions can be waived.  "The general rule is that one who has been notified to attend a certain proceeding and does do so, cannot be heard to complain of alleged insufficiency of the notice; it has in such instance served its purpose.  This rule applies to one . . . who responds to a notice of motion without adequate notice [citation]." (*De Luca v. Board of Supervisors* (1955) 134 Cal.App.2d 606, 609.)

" 'It is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of motion.  [Citations.]  This rule applies even when no notice was given at all.  [Citations.]  Accordingly, a party who appears and contests a motion in the court below cannot object on appeal or by seeking extraordinary relief in the appellate court that he had no notice of the motion or that the notice was insufficient or defective.' " (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697, quoting *Tate v. Superior Court* (1975)

29

45 Cal.App.3d 925, 930; see also *Alliance Bank v. Murray* (1984) 161 Cal.App.3d 1, 7-8 and fn. 2 ["record does not indicate . . . that appellant specially appeared at the motion solely to contest jurisdiction"].)

This rule of waiver also applies where the trial court continued the hearing on the motion due to untimely service. The court does not act in excess of its jurisdiction when it continues the noticed hearing on the basis of untimely service, and the opposing party argues the merits of the motion at the continued hearing. (See *Hupp v. Freedom Communications, Inc.* (2013) 221 Cal.App.4th 398, 406-407; *Karz v. Karl* (1982) 137 Cal.App.3d 637, 648.)

Conversely, where untimely notice of a motion is attributable to a statutory violation by the moving party, and the opposing party objects only to the notice and does not argue the merits, the defective notice is not waived. (*Robinson v. Woods* (2008) 168 Cal.App.4th 1258, 1267-1268; cf. *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 650-651 [nonmoving party's appearance and opposition based on the lawfulness of trial court's order setting the motion, but not on moving party's service of the motion, is not a waiver by acquiescence].)

Defendants claim that in opposing the discovery motions, they challenged only the trial court's jurisdiction to hear the motions due to the faulty service and not the merits of the motions. While defendants did not argue the merits of the motion itself, they certainly contested more than solely the court's jurisdiction based on insufficient notice. Although they couched their additional arguments as jurisdictional, the arguments in fact challenged the merits of the action by asserting their affirmative defenses and allegations in the cross-complaint. As we stated above, an attorney's violation of the Rules of Professional Conduct or other fiduciary or common law duties does not affect or challenge the trial court's jurisdiction to hear the matter. By raising these additional arguments, defendants did not attack just the court's jurisdiction to hear the motions; they argued the merits of the action, and they were able to do so by receiving and acting upon

30

the mailed notices.  Under these circumstances, where defendants appeared at the hearings and argued beyond the motion and on the merits of the action, we conclude defendants waived their objection to the timeliness of the discovery motions' service.

In any event, even if defendants had not waived their objection to service of the discovery motions, we still would not reverse the judgment based on the untimely notice. In order to obtain a reversal on a procedural flaw such as a defectively-served notice of a discovery motion, defendants must demonstrate they were prejudiced by the defect. (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1289.)  " 'Procedural defects which do not affect the substantial rights of the parties do not constitute reversible error.  (Code Civ. Proc., § 475.)' "  (*Ibid.*, quoting *Lever v. Garoogian* (1974) 41 Cal.App.3d 37, 40.)

Defendants cannot demonstrate they were prejudiced.  The trial court granted the motion to compel Soares to be deposed on March 5, 2015, 84 days after service of the motion on him.  He had sufficient knowledge of the motions and time to prepare an opposition by then.

After a number of continuances, the trial court granted the motions against Goguen to deem admissions admitted and compel answers to interrogatories on June 11, 2015, 182 days after they were served on December 10, 2014.  Goguen claims he was incapacitated for much of that time due to his health, and he asserts the trial court violated his due process rights by continuing to prosecute the action against them after he notified the court of his condition.  But the trial court accounted for his situation by granting a continuance on March 5, 2015, and it gave Goguen opportunities to establish his incapacity with a statement from his cardiologist.  Goguen did not comply with the court's directive to submit evidence from his cardiologist until June 29, one week after the date of his ordered deposition.  He has not established that the trial court abused its discretion in its response to his health, or that he was prejudiced by the hearing on the discovery motions held on June 11.

31

*Discovery Sanctions*

Defendants assert a number of errors regarding plaintiff's motions to show cause to hold defendants in contempt, for discovery sanctions, and for hearing those motions on shortened time. Defendants' contentions regarding the contempt motions are moot because plaintiff asked the trial court to set aside the contempt motion, effectively withdrawing it, and the trial court did not rule on it.

Regarding the motions to shorten time and for discovery sanctions, defendants contend (1) the trial court erred in denying their motion to quash service, as plaintiff's motions were not served properly or timely; (2) the court's order shortening time for plaintiff was invalid because it declared that electronic service was sufficient when defendants had previously notified the court they would not accept service by e-mail; (3) the court erred in granting the motions because they were initiated, prosecuted, and issued during the stay of proceedings; and (4) the trial court lacked jurisdiction to schedule trial because "jury malpractice cases require case-within-a-case review, which is impossible until the underlying case is completed, per ECJ [exclusive continuing jurisdiction]." Because we have already rejected defendants' arguments regarding exclusive continuing jurisdiction, we will not address defendant's fourth argument.

A.    Background

As mentioned, the trial court stayed proceedings as to Goguen on July 30, 2015. The court excluded from the stay a motion plaintiff proposed to bring seeking to maintain the status quo and enjoin Goguen from selling his Oregon rental property. That motion was later filed, and the trial court granted the motion on August 20, 2015.

The stay was ultimately continued to November 5, 2015. However, on October 30, 2015, plaintiff filed an ex parte application for an order shortening time to hear motions for an order to show cause and discovery sanctions arising in part from Goguen

selling his rental property in violation of the court's status quo order. Plaintiff set the ex parte hearing for November 2, 2015. He asked for the motions to be heard on November 19, 2015. Plaintiff noticed defendants of his application to shorten time by e-mail and voicemail messages on October 29, 2015. He served the application papers the following day by electronic service.

On November 2, 2015, Goguen substituted Scott Radcliffe as his attorney in place of himself and filed an opposition to the ex parte application.

At the November 2 ex parte hearing, the parties stipulated to electronic service via fax or e-mail "on the motion and any responsive pleadings." Radcliffe confirmed he had received the motions. The trial court granted the application to shorten time and set the hearing on the motion for discovery sanctions for November 19, 2015, with opposition to be filed by November 10. The court also ordered that any proceeds from the sale of the property be placed in a blocked account.

Three days later, on November 5, 2015, the trial court lifted the stay.

On November 16, 2015, defendants informed the trial court they would not appear at the November 19 hearing. Goguen had filed bankruptcy, and Soares had a scheduling conflict. At the November 19 hearing, the trial court continued the matter to November 24, 2015.

At the November 24 hearing, the court stated as a tentative ruling that it intended to grant the discovery sanctions motion, but it reserved ruling on them pending trial. The court stayed all proceedings as to Goguen due to his pending bankruptcy.

At a pre-voir dire conference on November 30, 2015, the trial court adopted its tentative ruling as to Soares and granted the discovery sanctions motion against him. As a sanction, the court excluded from trial all evidence from Soares opposing the complaint and supporting affirmative defenses and the cross-complaint. Two days later, on December 2, Soares filed bankruptcy. The trial court vacated the trial date and set a case management conference for June 2016.

33

In January 2016, the bankruptcy court granted plaintiff relief from the stay in Goguen's bankruptcy claim, and it dismissed Soares's bankruptcy claim. As a result, the trial court set the hearing on the motion for discovery sanctions, ultimately setting it for May 5, 2016.

Meanwhile, Goguen filed a motion to quash service, which also was ultimately set to be heard on May 5, 2016. He sought to quash service of all of plaintiff's motion papers, including the motion for discovery sanctions. Goguen claimed (1) there was no service made during a period when service would have been timely; (2) discovery sanction motions were not served by 2:00 p.m. as directed by the order shortening time; (3) the order shortening time authorized electronic service when defendants had previously filed a notice of nonacceptance of e-mail service; and (4) the order shortening time was invalid because it was issued during a stay of all proceedings.

On May 5, 2016, the trial court denied the motion to quash. It granted the motion for discovery sanctions against Goguen on May 19, 2016.

B.     Analysis

1.     Motion to quash

Defendants contend the trial court erred in denying their motion to quash service, as plaintiff's motions for order shortening time and for discovery sanctions were not served properly or timely. The record indicates that any error in service was waived. At the hearing on the application to shorten time, Goguen's counsel acknowledged to the court he had received the ex parte documents, which included the motion for sanctions. Counsel argued the merits of the ex parte application in a written opposition and in oral argument. The court deemed the documents had been served, as it set the dates for defendants' opposition to be filed. Goguen's counsel also received and accepted service of a file-endorsed copy of the order shortening time. Under these facts, the trial court did not error in denying the motion to quash.

34

### 2.     Electronic service

Defendants contend the court's order shortening time was invalid because it declared that electronic service was sufficient when defendants had previously notified the court that they would not accept service by e-mail. This argument ignores the fact that at the ex parte hearing, Goguen's counsel and Soares stipulated to electronic service via fax or e-mail of the motion and any responsive papers. This stipulation overrode any prior declaration by defendants refusing to accept electronic service of filings.

### 3.     Stay of proceedings

Defendants assert the court erred in granting the ex parte and sanctions motions because they were initiated, prosecuted, and issued during the stay of proceedings. This argument ignores the context in which the motions arose. The trial court expressly excluded from the stay of proceedings plaintiff's motion to preserve the status quo and to enjoin Goguen from selling his real property. When Goguen violated that order and sold the property, the trial court did not abuse its discretion by hearing a motion to remedy the breach of the order it had expressly excluded from the stay. Moreover, the trial court lifted the stay three days after holding the ex parte hearing and issuing the order shortening time. Thus, subsequent briefing and the hearing on the motion were not encumbered by the stay.

### VI

*Forfeited Arguments*

Defendants raise a number of contentions without providing argument or citation to authority to support them. These contentions are: (1) the trial court violated rule of court 3.515(h) and defendants' constitutional rights to due process and effective representation by taking a number of actions individually and cumulatively, including by prosecuting the action after learning Goguen was severely ill, granting the motions and

orders concerning the sale of Goguen's real property after granting defendants' request for a stay, and hearing and granting plaintiff's motion for discovery sanctions while the stay was pending; (2) plaintiff violated the Rules of Professional Conduct by filing a motion to strike certain of defendants' court filings which plaintiff claimed were prepared by Bullock, a nonattorney, and to refer Bullock to the district attorney for prosecution; and (3) filing the complaint in this action was an illegal transaction under Civil Code section 1667.

Other than to recite the factual allegations, defendants did not include any supporting argument or authorities in their opening brief in support of these contentions. A civil appellate brief must "support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(A)(1)(b).) Defendants' "barefaced assertion[s] raised without any authority or cogent argument" are forfeited. (*Hard v. California State Employees Assn.* (2002) 96 Cal.App.4th 708, 715-716.)

VII

*Plaintiff's Actions in* Bullock

Defendants claim that plaintiff's actions in *Bullock* and his withdrawal as counsel in that matter violated the Rules of Professional Conduct, fiduciary duties, and Goguen's due process rights, all of which in turn voided the attorney fee contract. Many of the same allegations appear in defendants' cross-complaint.

As a result of the discovery sanctions and the order deeming all requests for admission to be true, defendants did not present evidence for these contentions to the trial court. We will not entertain these factual allegations in the first instance. Relatedly, defendants' request for judicial notice and motion for sanctions are denied.

36

DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to plaintiff.  (Cal. Rules of Court, rule 8.278(a).)

                                                 _____

                                                 HULL, Acting P. J.

We concur:

_____

DUARTE, J.

_____

HOCH, J