Filed 11/7/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PAUL HUPP, | |
| Plaintiff and Appellant, | E057390 |
| v. | (Super.Ct.No. RIC1204151) |
| FREEDOM COMMUNICATIONS, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge.
Affirmed.

Paul Hupp, in pro. per., for Plaintiff and Appellant.

James E. Grossberg, Ashley I. Kissinger and Levine Sullivan Koch & Schulz LLP
for Defendant and Respondent Freedom Communications Inc. dba The Orange County
Register.

On March 22, 2012, plaintiff Paul Hupp filed a complaint against the Freedom
Communications Inc., dba The Orange County Register (the Register), alleging that it
breached its user agreement with Hupp by failing to remove comments made on their
website concerning Hupp.

1

The Register responded by filing a special motion to strike (anti-SLAPP) motion under Code of Civil Procedure section 425.16.[1]  After hearing, the trial court granted the motion to strike Hupp's complaint.

Hupp appeals.  He contends that the action is a garden variety breach of contract action which is not subject to an anti-SLAPP motion.  He also argues that there are numerous defects in the service of various court documents in connection with the motion.

**FACTS**

On March 12, 2012, the Register published on its website an article concerning public safety pensions in Orange County.  Many readers, including Hupp, filed comments on the article.  Many of the postings were between Hupp and defendant Mike Bishop. The Register alleges that Hupp complained to the author of the pension article about five postings by Bishop and demanded that they be removed from the website.

In his complaint, Hupp contends that the Register violated its user agreement "by making public comments and not removing said comment about Plaintiff that includes but is not limited to; invading the privacy of Plaintiff, harassed Plaintiff, was harmful to Plaintiff."  Accordingly, Hupp seeks breach of contract damages from the Register.

The Register included a copy of the User Agreement in its appendix.  The User Agreement provides: "The bulletin boards, chat rooms, community calendars, and other

---

[1]  Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

interactive areas of the Service are provided to users as interesting and stimulating forums to express their opinions and share ideas and information. We expect people to differ—judgment and opinion are subjective—and we encourage free speech and the exchange of ideas. But, by using these areas of the Service, you are participating in a community that is intended for all of our users. [¶] Therefore, we reserve the right, but undertake no duty, to review, edit, move, or delete any User Content provided for display or placed on the Service, at our sole and absolute discretion, without notice to the person who submitted such User Content."

As noted above, the Register filed an anti-SLAPP motion under section 425.16, subdivision (b)(1) instead of answering the complaint.

## ANTI-SLAPP MOTIONS

Section 425.16, subdivision (b)(1) authorizes a special motion to strike causes of action "against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." The subdivision also provides that the motion shall be granted unless plaintiff establishes that there is a probability that plaintiff will prevail on the claim.

Although Hupp contends that his breach of contract cause of action does not refer to any free speech issue, the statute plainly applies to *any* cause of action that meets the statutory requirements. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 739.)

3

The statute states the legislative purpose as follows: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly." (§ 425.16, subd. (a).)

Accordingly, the anti-SLAPP motion is directed against SLAPP suits. "Litigation which has come to be known as SLAPP is defined by the sociologists who coined the term as 'civil lawsuits . . . that are aimed at preventing citizens from exercising their political rights or punishing those who have done so.' [Citation.] The paradigm SLAPP is a suit filed by a large developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to the developers' plans. [Citations.] SLAPP's, however, are by no means limited to environmental issues [citation], nor are the defendants necessarily local organizations with limited resources. [Citation.] [¶] The favored causes of action in SLAPP suits are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress. [Citation.] Plaintiffs in these actions typically ask for damages which would be ruinous to the defendants. [Citations.] [¶] SLAPP suits are brought to obtain an *economic* advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. [Citation.] . . . [¶] Thus, while SLAPP suits 'masquerade as ordinary lawsuits' the conceptual features

4

which reveal them as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so. [Citation.]" (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815-817, overruled on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 (*Equilon*).)

While Hupp's complaint does not generally fit the above description of a typical SLAPP suit, it is subject to an anti-SLAPP motion if it fits within the statutory definition, which includes having the purpose of punishing the Register for exercising its free speech rights. Hupp's appeal on this point provides only two sentences of argument and does not address the issues presented by the trial court's decision.

### THE ANTI-SLAPP MOTION IN THIS CASE

In reviewing an appeal from the decision granting the anti-SLAPP motion, we determine de novo (1) whether the defendants made the threshold showing that the complaint arises from protected activity; and (2) if so, whether plaintiff has demonstrated a probability of prevailing on its claim. (*Equilon, supra*, 29 Cal.4th at p. 67.)

Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (*Ibid.*)

Applying these principles to this case, we conclude that defendants have established that the gravamen of the complaint was based on protected activity, and that plaintiff has not sufficiently demonstrated a probability of prevailing on the merits.

The Register's motion first argues that the Register's actions arise from its acts in furtherance of its free speech rights. It relies on the definitions of an act in furtherance of a person's right of free speech in section 425.16, subdivision (e). That section provides four categories of such acts. The Register cites the final two: "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 426.16, subd. (e)(3) & (4).)

The Register then cites *Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133. In that case, the court held that "[a]n act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right. [Citation.]" (*Id*. at p. 143.) The Register contends that its maintenance of a website that publishes articles of public interest, such as the pension article in this case, and that allows user comments on such articles, facilitates free speech and the exchange of ideas and opinions on the Internet.

Our Supreme Court has held that "[w]eb sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute. [Citations.]" (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 (*Barrett*).) *Barrett* went on to hold that the Communications Decency Act of 1996 (47 U.S.C. § 230) confers "broad immunity against defamation liability for those who use the Internet to publish information that originated from another source." (*Barrett* at p. 39.) It concluded that "section 230 prohibits distributor liability for Internet publications." (*Id*. at p. 40.)

6

Subsequently, *Barrett* was followed by *Wong v. Jing* (2010) 189 Cal.App.4th 1354. It held that "although 'not every [w]eb site post involves a public issue' [citation], consumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute. [Citations.]" (*Id.* at p. 1367.)

In the current case, the initial exchange of comments between Hupp and Bishop concerned the pension story. The tenor of the exchange changed when Bishop said he had made a Google search on Hupp and asked if he was a vexatious litigant. In its memorandum of points and authorities in support of the anti-SLAPP motion, the Register essentially argued that Hupp was such a well-known vexatious litigant that he had been the subject of discussion on other websites.[2]

Bishop also provided a link to a forum which was discussing a petition for rehearing en banc filed by Hupp in the Ninth Circuit Court of Appeals. The petition contains especially extreme language that can be interpreted as threats directed at the judges themselves, and it received wide comment on the Internet.[3] The Register therefore argues that the subject of vexatious litigants was also an issue of public interest.

---

[2] The Register found it necessary to include in its appendix 145 pages of docket sheets in federal district court cases filed by Hupp and records of state court actions in which his name appears. It also includes two district court orders declaring Hupp to be a vexatious litigant. {RA 195-198}

[3] The Register also provides us with a copy of the offensive petition for hearing en banc, followed by eight Internet articles and forum postings on various websites

*[footnote continued on next page]*

7

We follow *Barrett* and the other cases cited above and conclude that the Register's actions arose from its acts in furtherance of its free speech rights. Maintaining a forum for discussion of issues of public interest is a quintessential way to facilitate rights, and the Register has no liability for doing so.

For the same reason, we conclude that Hupp has not shown a probability of prevailing in the action. He has not provided any argument on this issue. As *Barrett* states, the Communications Decency Act of 1996 (47 U.S.C. § 230) "prohibits 'distributor' liability for Internet publications." (*Barrett, supra*, 40 Cal.4th at p. 40.) Thus, the Communications Decency Act completely bars this type of lawsuit against an Internet publisher. Accordingly, subject to the following section, the trial court properly granted the Register's anti-SLAPP motion.

## DOCUMENT SERVICE ISSUES

Hupp's complaint was filed on March 22, 2012. It was served on July 2, 2012. The Register had 30 days to answer or otherwise respond to the complaint. (§ 412.20, subd. (a)(3).)

On July 24, 2012, within the 30 day period, the Register filed an ex parte motion to extend the time to file an answer or other responsive pleading. It requested an extension because it planned to file an anti-SLAPP motion by August 31, 2012.

---

*[footnote continued from previous page]*
concerning the petition. {RA 232, 241, 258-322} It is interesting to note that, despite his alleged privacy concerns, Hupp participated in the Volokh Conspiracy postings, even though many details of his life were openly discussed.{RA 288-312}

The request noted that such a motion may be filed within 60 days of the service of the complaint. The Register's counsel also stated that, on July 16, 2012, she called and left a telephone message for Hupp, and also sent him an e-mail regarding the extension request. "Mr. Hupp promptly responded to the email, but it is not clear whether he opposed the application."

The motion was granted and the judicial officer ordered that a copy be served on all parties that had appeared in the case. Hupp acknowledges receipt of the order on July 30, 2012.

On August 31, 2012, the anti-SLAPP motion was filed. The motion was set for hearing on September 28, 2012. A proof of service by mail was filed with it and the register of actions states that a declaration of service was filed on that date. However, Hupp denies receiving the motion.

On September 13, 2012, the process server filed an amended proof of service of the motion documents. The document states that the prior proof of service "inadvertently contained incorrect information with respect to service." The amended proof of service states that the documents were served "by leaving copies of the papers with the security guard at the front of the gated community in which the plaintiff's residence is contained . . . ." This is a permissible means of service. (*Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387.)

However, Hupp subsequently provided a declaration of the gate guard that states that he turned the process server away; the process server did not leave any documents

9

with him, and he would not have accepted them. The gate guard was apparently unaware of section 415.21.

On September 24, 2012, Hupp filed an ex parte motion to strike the anti-SLAPP motion for lack of a proper service. However, he acknowledged receipt of the motion on September 13, 2012 by Federal Express. This statement refers to a copy of the motion papers which was sent on September 12, 2012. Hupp thus states that he only had 15 calendar days to respond before the September 28 hearing.

The ex parte motion filed by Hupp on September 24, 2012, was titled as a motion to strike the anti-SLAPP motion for lack of proper service. However, Hupp refers to it as opposition papers to the anti-SLAPP motion.

The Register states that a case management conference was held on October 10, 2012 and Hupp stated that the motion was actually his opposition to the anti-SLAPP motion. Apparently, the court considered it as an opposition brief, as did the Register. The Register then filed a reply on October 11, 1012.

On September 26, 2012, the Register's counsel filed a motion for a short continuance of the hearing set for September 28, 2012. Counsel stated that she was required to have minor surgery on September 25, 2012, and that she would be unable to attend the scheduled hearing. Counsel also stated that she left a telephone message with Hupp on September 17, and had sent him a detailed email on September 13th. The declaration in support of the continuance request was mailed on September 17, 2012, and a proof of service by mail was filed on September 25, 2012.

10

The request for a continuance was granted and the hearing on the motion was held on October 18, 2012. Our record does not contain a transcript of the hearing, but the court granted the anti-SLAPP motion, presumably for the reasons discussed above.

From the foregoing, we conclude that Hupp admittedly received the moving papers by Federal Express on September 13, 2012. He therefore had 34 calendar days before the rescheduled hearing on October 18. (§ 12.) He therefore had actual notice of the action in time to defend the anti-SLAPP motion. (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 547-548.)

Hupp cites section 1005. That section calls for moving papers to be served and filed at least 16 court days before the hearing. If, as here, an overnight delivery service is used, two calendar days are added on for a total of 18 days. Because of the continuance, the Register's motion was filed long before 18 days before the hearing.

Opposing papers must be filed within nine court days before the hearing or, in this case, October 5, 2012. (§ 1005.) Thus, Hupp had 16 court days (from September 13 to October 5) to prepare his response.

Hupp argues that the two ex parte motions to extend the dates should affect the time computations. As discussed above, the first motion merely extended the time to file the motion. It did not affect the time to respond to the motion.

The second ex parte motion continued the hearing on the anti-SLAPP motion from September 28 to October 18. Although the time on the original hearing date (September 13 to 28) was insufficient, Hupp had sufficient time to file documents nine court days before the October 18 hearing date.

The time properly began to run when the motion was admittedly received on September 13, not counting prior service attempts.[4] The calendar was not reset by the ex parte continuance request and Hupp does not cite any authority to establish that an ex parte continuance started a new time running on September 27, the date of the continuance request. We therefore apply the statutes and find that the Register complied with all service requirements.

---

[4] Although the alleged service on the guard at the gated community on August 31, 2012 was disputed, the dispute is irrelevant to the outcome because of the Federal Express service of the motion documents, which Hupp admits he actually received on September 13, 2012.

Since we do not have a transcript of the October 18 hearing, we do not know if the court discussed these issues or not. Hupp says the court took no action to address these issues, but he does not say if any rulings were made. {AOB 8}

**DISPOSITION**

The trial court's order granting the Register's special motion to strike plaintiff's complaint is affirmed. The Register to recover its costs on appeal.[5]

CERTIFIED FOR PUBLICATION

RAMIREZ            
                                                          P. J.

We concur:

McKINSTER         
                              J.

KING            
                              J.

---

[5] At oral argument, counsel for the Register asked this Court to direct the trial court to award and determine attorney fees under section 425.16, subdivision (c), which provides that a "prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs" and *Mendoza v. ADP Screening* (2010) 182 Cal.App.4th 1644, which holds that this mandatory provision applies to attorney fees and costs incurred in responding to the unsuccessful plaintiff's appeal. We decline to provide such direction to the trial court because we trust that it will follow the law on this point.