J-A24042-25

2026 PA Super 2

| | | |
|---|---|---|
| LUIS HERNANDEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SHARON ZOOK | : | |
| | : | |
| Appellant | : | No. 560 MDA 2025 |

Appeal from the Order Entered April 3, 2025
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2024-CV-1155

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

OPINION BY KUNSELMAN, J.:                **FILED JANUARY 06, 2026**

In this defamation case, Sharon Zook appeals as of right[1] from the order denying her Special Motion to Dismiss or for Entry of Judgment, filed under Pennsylvania's new Uniform Public Expression Protection Act ("UPEPA").[2] Because Ms. Zook's special motion is untimely and she failed to show good cause for her untimeliness, we affirm.

According to Ms. Zook, "On May 8, 2024, she sent an email to Lebanon County Commissioners Robert Phillips, Michael J. Kuhn, and Jo Ellen Litz." Zook's Brief at 11 (citing Reproduced Record at 172a-73a).  The email also went to the County Solicitor.  It concerned Luis Hernandez, the owner of various senior-care businesses in Lebanon County.

---

[1] **See** 42 Pa.C.S.A. § 8340.17 (permitting interlocutory appeals from orders disposing of a Uniform Public Expression Protections Act special motion).

[2] **See** 42 Pa.C.S.A. §§ 8340.11 – 8340.18.

In her email, Ms. Zook accused Mr. Hernandez of violating Pennsylvania laws and abusing elderly patients in his nursing homes. She further claimed Mr. Hernandez had lawsuits and charges against him for failing to report taxes. She also alleged that complaints against the nursing homes were being forwarded to the city, where Mr. Hernandez an agent protecting him because Mr. Hernandez is part of an organized crime network and is trafficking undocumented immigrants. Finally, she implored the recipients of the email to do something about Mr. Hernandez:

> You have a duty to these older adults under PA law. Since those within the county will not protect them, the law obligates you to seek help from the state and federal authorities. Any one of you could get [the Governor of Pennsylvania,] Josh Shapiro, involved instead of standing back and subjecting a house full of vulnerable adults to abuse and neglect, knowing that the [District Attorney of Lebanon County] plans to do NOTHING, and the city is protecting organized criminals, not these older adults.
>
> The DA irresponsibly sent my complaint to the city (before I was told how this was going to be "handled"), and into the hands of [Mr. Hernandez's] agents . . . .

Complaint Ex. A at 1.

After learning about the email, Mr. Hernandez sued Ms. Zook for defamation *per se*. He sought over $50,000 in damages and an injunction to stop Ms. Zook from making further claims that he was a criminal. **See** Complaint at 3-4.

On August 2, 2024, a deputy sheriff of Lebanon County served Ms. Zook with Mr. Hernandez's complaint. **See** Affidavit of Deputy Valdez at 1. Initially,

Ms. Zook filed preliminary objections in the nature of a demurrer, which Mr. Hernandez opposed.

While preliminary objections were pending, on October 29, 2024, Ms. Zook filed a Special Motion to Dismiss or for Entry of Judgment under the UPEPA. Therein, Ms. Zook conceded that her special motion was untimely, because she had "not made [her motion] within the 60-day period" as mandated in the statute. Zook's Special Motion at 5.

Nevertheless, Ms. Zook contended that her time for bringing the special motion should be extended due to "a showing of good cause." *Id.* (quoting 42 Pa.C.S.A. § 8340.16 (b)(2)). She alleged that "good cause" existed for her delayed filing of the special motion, because (1) reaching the merits of the special motion would avoid her having to file a separate action against Mr. Hernandez under 42 Pa.C.S.A. § 8320.1; (2) neither party would suffer prejudice, because the matter was still at the pleading stage; (3) "UPEPA was very recently enacted[; hence, Ms.] Zook's counsel only recently learned of its passage"; and (4) allowing an untimely filing would be "consistent with the General Assembly's mandate of broad construction of UPEPA under 42 Pa.C.S.A. § 8340.12(4)." *Id.* at 5-6.

Mr. Henandez opposed the special motion. Following oral argument, the trial court denied Ms. Zook's special motion on the merits. However, the court did not consider the threshold issues of the motion's untimeliness or whether Ms. Zook made a good-cause showing such that her delay in the filing of the UPEPA special motion was excused. This timely appeal followed.

- 3 -

Ms. Zook raises three appellate issues:

1. Whether the trial court erred in denying Ms. Zook's special motion . . . in finding that [she] failed to show that her email communication constituted protected public expression [under UPEPA?]

2. Whether the trial court erred in denying Ms. Zook's special motion . . . in finding Mr. Hernandez stated a *prima facie* case . . . for defamation[?]

3. Whether the trial court erred in denying Ms. Zook's special motion . . . in finding that Mr. Hernandez is not a limited-purpose-public figure[?]

Zook's Brief at 7.

When we review orders disposing of special motions arising under the UPEPA, the General Assembly has directed this Court to apply the scope and standard of review for summary judgment. "In ruling on a [special] motion . . . the court shall consider the record as defined in Pa.R.C.P. No. 1035.1 (relating to Motion for Summary Judgment. Definition), the special motion and responses and the evidence which can be considered on a motion for summary judgment under Pa.R.C.P. No. 1035.2 (relating to motion)." 42 Pa.C.S.A. § 8340.16(d)(4). "In reviewing a grant of summary judgment, [the appellate] Court's standard of review is *de novo*, and our scope of review is plenary." *Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 649 (Pa. 2020).

Additionally, we have long held that an appellate court "may affirm a trial court's ruling on any basis supported by the record on appeal." *Lynn v. Nationwide Ins. Co.*, 70 A.3d 814, 823 (Pa. Super. 2013). This is known as "the right-for-any-reason doctrine . . . ." *In re A.J.R.-H.*, 188 A.3d 1157,

- 4 -

1175 (Pa. 2018). The rationale for the doctrine "is that appellate review is of the judgment or order before the appellate court, rather than any particular reasoning or rationale employed by the lower tribunal." *Id.* at 1176.

Thus, before reaching the merits of Ms. Zook's claims of error, we must determine whether her untimely special motion was properly before the trial court. If it was not, we may affirm the order denying her special motion on this alternative, procedural basis under the right-for-any-reason doctrine.

The UPEPA took effect in Pennsylvania on July 17, 2024 – two weeks before Mr. Hernanadez filed this suit. Our legislature adopted and Governor Shapiro signed the UPEPA into law because:

> (1) There has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression.
>
> (2) It is in the public interest to encourage continued participation in matters of public significance. This participation should not be chilled through abuse of the judicial process.

42 Pa.C.S.A. § 8340.12.

The Uniform Law Commission, which authored and promoted the UPEPA for the several States to adopt, has stated that the UPEPA is an "anti-SLAPP law." "Although 'SLAPP' — an acronym for 'Strategic Lawsuit Against Public Participation' — does not appear in the Act's title, the [UPEPA] should be considered an anti-SLAPP act." 42 Pa.C.S.A. § 8340.11 (Editor's Note: Uniform Law Comment).

Although the typical SLAPP lawsuit is "filed by a large developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to the developers' plans, SLAPPs are by no means limited to environmental issues, nor are the defendants necessarily local organizations with limited resources." *Id.* (quoting *Hupp v. Freedom Communications, Inc.*, 163 Cal. Rptr. 3d 919, 922 (Cal. App. 2013) (some punctuation omitted). "While SLAPP suits 'masquerade as ordinary lawsuits' the conceptual features which reveal them as SLAPPs are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Id.*

To accomplish its legislative ends, the UPEPA allows any defendants who think they may be victims of a SLAPP suit to file a so-called "special motion" for summary judgment during the pleadings stage of the litigation. These "special motions" are legislatively ordained under Section 8340.16 of the UPEPA, titled "Pretrial Motion."

That Section, which is the heart of the statute, creates new rules of civil procedure for any lawsuit that the defendant believes is a SLAPP suit. Under the rules of Section 8340.16:

> **(a) Authorization.--**A party may file a special motion for dismissal of or judgment on a cause of action, or part of a cause of action, based on a party's protected public expression immunity.
>
> **(b) Time.--**A motion under subsection (a) must be made as follows:

(1) Except as provided in paragraph (2), no later than 60 days after being served with a pleading asserting a cause of action based on protected public expression.

(2) The court may extend the time under paragraph (1) upon a showing of good cause.

**(c) Effect.--**A motion under subsection (a) does not preclude a party from asserting protected public expression immunity through other pleadings and motions under the Pennsylvania Rules of Civil Procedure.

**(d) Procedure.--**Upon motion under subsection (a), all of the following apply:

(1) Subject to paragraphs (2) and (3), the court shall hear oral argument on the motion within 60 days after the motion is filed.

(2) The court may extend the time period under paragraph (1):

(i) to allow discovery under subsection (f)(2)(i); or

(ii) for good cause.

(3) If paragraph (2) applies, the court shall hear argument as follows:

(i) For an extension under paragraph (2)(i):

(A) within 60 days after the court order allowing the discovery; or

(B) for good cause, on the date specified by the court.

(ii) For an extension under paragraph (2)(ii), on the date specified by the court.

(4) In ruling on a motion under subsection (a), the court shall consider the record as defined in Pa.R.C.P. No. 1035.1 (relating to Motion for Summary Judgment. Definition), the special motion and responses and the evidence which can be considered on a motion for summary judgment under Pa.R.C.P. No. 1035.2 (relating to motion).

(5) Within 60 days after hearing oral argument under paragraph (1) or (3), the court shall:

(i) rule on a motion under subsection (a); and

(ii) place on the record a written opinion stating its reasoning for its ruling.

**(e) Stay.--**If a motion under subsection (a) is made, all of the following apply:

(1) Except as provided in subsection (f), all other proceedings in the action are stayed. This paragraph includes discovery and the moving party's obligation to file a responsive pleading.

(2) A stay under paragraph (1) shall remain in effect until the order ruling on the motion becomes final. This paragraph includes an appeal of the order.

**(f) Exceptions to stay.--**During a stay under subsection (e), all of the following apply:

(1) A party may challenge service of a writ or complaint, personal or subject matter jurisdiction or venue.

(2) A court may take any of the following actions:

(i) Allow limited discovery if a party shows that specific information:

(A) is necessary to establish whether a party has satisfied or failed to satisfy a burden under section 8340.15 (relating to grant of immunity); and

(B) is not reasonably available unless discovery is allowed.

(ii) Upon a showing of good cause, hear and rule on a request for special or preliminary injunctive relief to protect against an imminent threat to public health or safety.

(iii) Upon a showing of good cause, permit a proceeding relating exclusively to a cause of action:

(A) in response to which no party has asserted protected public expression immunity; and

(B) which does not implicate an issue relevant to a party's assertion of protected public expression immunity or to the cause of action for which that immunity has been asserted.

(3) A party may voluntarily discontinue all or part of the party's action.

(4) A party may move to recover attorney fees, court costs and expenses of litigation under section 8340.18 (relating to awards).

42 Pa.C.S.A. § 8340.16.

The UPEPA is clearly procedural in nature, and the legislature conceded as much.  "[T]he Act operates in a procedural manner – specifically, by altering the typical procedure parties follow at the outset of litigation . . . ." 42 Pa.C.S.A. § 8340.13 (Editor's Note:  Uniform Law Comment #2).  Like all of the Pennsylvania Rules of Civil Procedure, the UPEPA's purpose is to protect "rights . . . substantive in nature."  ***Id.*** (emphasis removed).

Indeed, an "Anti-SLAPP law, at its core, is one by which a legislature imposes ***external change upon judicial procedure***, in implicit recognition that the judiciary [itself] has not [] modified its own procedures to deal with this specific brand of abusive litigation."  Uniform Law Commission, Uniform Public Expression Protection Act:  Prefatory Note at 1, 10/2/20.[3] (emphasis added).

_____

[3] The Prefatory Note is available for download at: https://www.uniformlaws.org/viewdocument/enactment-kit-99?CommunityKey=4f486460-199c-49d7-9fac-05570be1e7b1&tab=librarydocuments (last visited 12/7/25).

Although the legislature's motives for passing the UPEPA were assuredly well intended, our review of the Editor's Notes and legislative history reveals that the constitutionality of the UPEPA is in doubt. On its face, the UPEPA gives the very strong impression that this Act is the General Assembly's latest attempt at rewriting the Pennsylvania Rules of Court.

Historically in Pennsylvania, such attempts have been a source of friction between the legislature and the judiciary, because procedural statues violate our state charter's separation-of-powers doctrine. The Constitution of the Commonwealth of Pennsylvania reserves the power to promulgate Rules of Civil Procedure to the Supreme Court of Pennsylvania. "The Supreme Court shall have the power to prescribe general rules governing practice, **procedure** and the conduct of **all courts** . . . ." Pa. Const. art. V § 10(c) (emphasis added).

"Article V, § 10(c) states two principles relevant here: [the Supreme] Court has the exclusive power to enact procedural rules, and a law inconsistent with such a rule is suspended." ***Commonwealth v. McMullen***, 961 A.2d 842, 848 (Pa. 2008). "A procedural statute conflicting with a rule is suspended under Article V, § 10(c). If, however, the legislature enacts a procedural statute, that statute is unconstitutional." ***Id.*** "Otherwise, a clearly unconstitutional procedural statute would be constitutional unless [and until] [the Supreme] Court promulgated a rule inconsistent with it." ***Id.***

Here, the Uniform Law Commission promulgated the UPEPA for national adoption. The Commissioners and Committee Members intended it to be and

- 10 -

to function as a purely procedural, anti-SLAPP law. Such a law may be fine in other States, but the UPEPA's constitutional viability is, at best, questionable in this Commonwealth.

Fortunately, this Court can and will reserve that constitutional issue for another day, because we may strictly apply the filing deadline for Ms. Zook's special motion. By doing so, we can avoid ruling on the constitutionality of the UPEPA in this appeal. We are mindful that "courts should avoid constitutional issues when the issue at hand may be decided upon other grounds." **In re Fiori**, 673 A.2d 905, 909 (Pa. 1996).

The legislature mandated that the party seeking the protection of the UPEPA must file a "special motion" to dismiss "no later than 60 days after being served with a pleading asserting a cause of action based on protected public expression." 42 Pa.C.S.A. § 8340.16(b)(1). Ms. Zook admitted in her special motion that she missed the 60-day deadline for that motion. **See** Zook's Special Motion at 5.

The special motion was facially untimely, because the sheriff served the complaint – the only pleading containing a cause of action – on August 2, 2024. Ms. Zook did not file the special motion until October 29, 2024, *i.e.*, nearly 90 days after service of the operative pleading. Thus, the special motion was untimely. By strictly enforcing the 60-time limit against Ms. Zook, this Court may avoid a potential separation-of-powers problem permeating the UPEPA.

Nevertheless, Ms. Zook does not think that her special motion should be dismissed as untimely. She claims her actions come within the "good cause" exception to the 60-day filing period. "The court may extend the [60-day period] upon a showing of good cause." 42 Pa.C.S.A. § 8340.16(b)(2). As we explain, that subsection does not apply.

First, Ms. Zook claims good cause for being late, because, disposing of her special motion on the merits would force her to file a separate lawsuit she argues, would merely renew her claims of statutory immunity under the UPEPA. Ms. Zook's argument is a *non sequitur*. Eliminating a potential future lawsuit is not good cause for an untimely filing in this action. In fact, it is not a "cause" of Ms. Zook's untimeliness at all. How she might elect to proceed in the future cannot possibly have caused her tardiness in the present lawsuit, because time does not run in reverse.

Second, Ms. Zook contends that neither party will suffer prejudice by addressing the merits of her special motion, because the case was in the pleading stage when she filed the untimely motion. In her view, because the motion was not filed during discovery, it came close enough after the complaint to satisfy the purpose of the 60-day time limit.

Obviously, Ms. Zook wouldn't be prejudiced if this Court entertained her motion, because she is the party seeking dismissal of the lawsuit. Hence, her lack of prejudice is irrelevant.

Mr. Hernandez, by contrast, has suffered great prejudice from the untimely motion. He has watched his case stagnate for over a year, while the

special motion and a subsequent interlocutory appeal were heard. The case has proceeded piecemeal through our appellate courts. He has not had a chance to engage in real discovery (much less get his case before a jury), because, under the legislature's procedural rules, Ms. Zook's special motion imposed an automatic stay on all proceedings in the trial court. Mr. Hernandez expected to have Ms. Zook's preliminary objections resolved, and his case move forward to discovery. But her untimely special motion has brought the wheels of justice to a grinding halt.

Moreover, the UPEPA placed Mr. Hernandez on the horns of a procedural dilemma. On the one hand, the special motion prevented him from engaging in true and full discovery. On the other, it required him to make his *prima facie* case based on a record that the UPEPA's procedural rules prevented him from developing in the first place. Thus, the untimely special motion deprived him of his rights under the Rules of Civil Procedure (adopted in 1937), which the Supreme Court of Pennsylvania based on hundreds of years of practice and have continually refined for the last eight decades. The special motion under UPEPA turned this case from a methodical search for truth into a procedural rush to judgment.

Ms. Zook's claim that her demand for a snap judgment did not prejudice Mr. Hernandez is untenable. She cannot make a good-cause showing at the expense of Mr. Hernandez's rights under the Rules of Civil Procedure.

Third, Ms. Zook admits that, because the "UPEPA was very recently enacted [her] counsel only recently learned of its passage . . . ." Zook's

- 13 -

Special Motion at 6. Hence, she believes that her attorney's ignorance of the new law was a viable excuse for not filing the special motion within the 60-day period.

"For nearly two centuries, courts have held that ignorance of the law furnishes no excuse to any person, either civilly or criminally; and, consequently, a mistake in law cannot be relieved against, either in equity or at law." **Matter of Peterson Fam. Irrevocable Tr.**, 333 A.3d 453, 460 (Pa. Super. 2025). Thus, in this Commonwealth, the fact that Ms. Zook's counsel was ignorant of the newly adopted UPEPA does nothing to excuse her untimely filing of the special motion.

In fact, a participant on the UPEPA Drafting Committee, in an article regarding the UPEPA's Special Motions, explained the "good cause" exception to the 60-day filing period by way of two illustrations. His second example illustrates this case in point:

> *Example #2*: A Complaint falling within the scope [of the UPEPA] is filed against a single defendant, but the defendant's counsel (who is unfamiliar with this practice area) is unaware that a Special Motion is available until after the 60-day period has expired. Several months into the litigation, the lightbulb suddenly goes on in that counsel's head and a Special Motion is filed late. In this case, the movant will not be able to show "good cause" to be able to file a late Special Motion (assuming that inadvertence of counsel does not rise to good cause within that particular jurisdiction).

Jay Adkisson, "The Uniform Public Expression Protection Act: The Special Motion," FORBES MAGAZINE ONLINE (May 31, 2021), available at

https://www.forbes.com/sites/jayadkisson/2021/05/31/the-uniform-public-expression-protection-act-the-special-motion/ (last visited 12/7/25). The lack of knowledge of the law by Ms. Zook's counsel does not rise to "good cause" in Pennsylvania.

Fourth and finally, Ms. Zook contends that she had "good cause" for her untimely filing of the special motion, because overlooking her late filing would be "consistent with the General Assembly's mandate of broad construction of UPEPA under 42 Pa.C.S.A. § 8340.12(4)." Zook's Special Motion at 6. Again, this is a *non sequitur*. Broadly interpreting the words of a statute has no relationship to the cause of Ms. Zook's untimely filing.

Furthermore, "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). The wording of 42 Pa.C.S.A. § 8340.16(b)(1) regarding the time for filing a special motion is clear and free of ambiguity.

"A [special] motion under subsection (a) must be made . . . no later than 60 days after being served with a pleading asserting a cause of action based on protected public expression." ***Id.*** No amount of broad construction can be given to the plain language of this statute, so as to convert 60 days into 90 days, as Ms. Zook requests. While the spirit of the UPEPA might have tempted the trial court into addressing the merits of Ms. Zook's untimely special motion, it exerts no such allure for us.

In sum, the trial court erred when it failed to address the threshold question of whether Ms. Zook made a good-cause showing to excuse her untimely special motion for dismissal under the UPEPA. However, we have undertaken that inquiry in the first instance, because, at this quasi-summary-judgment stage of the proceedings, where no factual findings have been made or sought below, that threshold inquiry presented a pure question of law under the UPEPA. *See Bourgeois*, *supra*. Therefore, we conclude that Ms. Zook's contention that she had "good cause" for missing the 60-day deadline for filing her special motion fails, as a matter of law.

On this alternative basis, we affirm the trial court's decision to deny the special motion under the UPEPA. We dismiss Ms. Zook's appellate issues as moot.

Order affirmed. The UPEPA's stay lifted. Case remanded for disposition of preliminary objections.

Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/06/2026

- 16 -