IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The City of Scranton | : | |
| | : | |
| v. | : | No. 1670 C.D. 2024 |
| | : | Submitted: February 4, 2026 |
| Thomas Coyne, a/k/a Tom | : | |
| Coyne & AFG Media, | : | |
| Appellant | : | |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT          FILED:  March 24, 2026

       Thomas Coyne, *pro se*, appeals an order of the Court of Common Pleas of Lackawanna County (trial court) permanently enjoining Coyne and his company, AFG Media, from disclosing any information contained in certain personnel files of the City of Scranton (City). On appeal, Coyne challenges the validity of the injunction, asserting that because the personnel files had been placed outside City Hall for recycling, they ceased to have any privacy protections. Further, the City lacked standing to vindicate the privacy interests of the third parties who are named in those personnel files. For the following reasons, we affirm.

**Background**

       The facts in this case are not in dispute. On or about April 24, 2024, following a City Council meeting, Coyne discovered boxes of personnel records labeled "Shred 2033," that had been placed outside the rear entrance of City Hall. The boxes contained the personnel files of former employees that included their names, dates of birth, social security numbers, addresses, phone numbers and other

personal information.  Coyne took pictures of the contents of the personnel files and made a video to document his discovery.  After Coyne contacted the police, he and an officer carried the boxes into City Hall.

At the April 30, 2024, City Council meeting, Coyne informed councilmembers that there had been a data breach by the City.  That same day, the City Solicitor sent Coyne a letter instructing him not to disclose any information obtained from the personnel files and to destroy all photographs of the file contents.

At a City Council meeting of October 8, 2024, Coyne disclosed the name of one former City employee from the personnel files.  He further stated that he would continue to name the other former employees until the City notified all of them that their personnel records had been subject to "exposure."  Coyne Brief at 6-7.

On October 15, 2024, the City filed a complaint seeking injunctive relief.  The complaint alleged that Coyne had examined and photographed property belonging to the City that had been mistakenly placed outside for recycling pickup.  Original Record (O.R.), Complaint ¶¶7-8; Item No. 1.  The City property consisted of boxes of personnel files of former City employees, containing their names, social security numbers, personal contact information, dates of birth, health information, and disciplinary actions.  The boxes had been marked with a date for record destruction of 2033.  *Id*. ¶10.

The complaint asserted that Coyne violated a City ordinance, which states as follows:

> All recyclables as defined by this article and placed for collection by the City under the provisions of this article and any other City regulations shall, from time of placement at the curb, become the property of the City.  *This article forbids scavenging of recyclables once they are placed at the curb and are the property*

*of the City.* Any scavenging of recyclables can be subject to the penalties and fines included in this article.

CITY CODE §400-30 (emphasis added).[1] The complaint alleged that Coyne "admitted and acknowledged his conduct publicly and to the City." Complaint ¶11. Further, the City's video surveillance footage showed Coyne "rifling through the box and its contents, removing various files from the box and taking photographs of various documents with his cell phone." *Id*. ¶12.

On October 15, 2024, the trial court entered a preliminary injunction ordering Coyne "a/k/a Tom Coyne & 'AFG Media'" to refrain from "disseminating, divulging and/or disclosing personal information obtained from the City of Scranton's recycling bins on or about April 24, 2024 including but not limited to identities, social security numbers, personal contact information, dates of birth, health information, disciplinary proceedings, information protected by applicable privileges, privacy laws and [Health Insurance Portability and Accountability Act of 1996 (HIPAA)[2]]." Trial Court Order, 10/15/2024; O.R., Item No. 4. The trial court scheduled a hearing for October 18, 2024, on the request to make the preliminary injunction permanent.

Coyne responded with a motion to strike the City's complaint under the "Anti-Strategic Lawsuits Against Public Participation (SLAPP) and the Uniform Public Expression Protection Act."[3] Coyne Motion to Strike at 1; O.R., Item No. 5.

---

[1] ADMINISTRATIVE CODE OF THE CITY OF SCRANTON, LACKAWANNA COUNTY, PENNSYLVANIA, (September 26, 1979), *as amended* (City Code).

[2] Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29 and 42 U.S.C.).

[3] 42 Pa. C.S. §§8340.11-8340.18 (Expression Protection Act). The associated Uniform Law Comment explains:

> Although "SLAPP"--an acronym for "Strategic Lawsuit Against Public Participation"--does not appear in the Act's title, the Uniform Public Expression

The motion asserted that the City's complaint sought to "chill the expression of his first amendment rights." *Id*. The motion asserted that because the files had been left outside for more than five hours with other trash and recyclables, any privacy rights that could otherwise be asserted had been destroyed. The boxes lacked any covers and were placed 40 feet from the rear entrance to City Hall, along a public sidewalk. Thus, the files were exposed to the public. In any case, the City, itself, had no privacy interest at stake. Finally, the motion alleged that Coyne did not release any protected, personal information but only the names of former City employees, which is public information.

At the hearing on October 18, 2024, the City introduced three videos: (1) the video made by Coyne of the boxes in the recycling bin; (2) the video of Coyne relating his discovery of the boxes to City Council; and (3) the video of Coyne's appearance at the City Council meeting divulging the name of one employee whose personnel file had been placed outside in a box left for recycling.

On behalf of the City, Jessica Eskra, the City Solicitor, testified that the personnel records contained financial information, dates of birth, social security numbers, addresses, names of children, tax information, potential medical information, and disciplinary records. Notes of Testimony, 10/18/2024, at 14-15

---

Protection Act should be considered an anti-SLAPP act. Although "[t]he paradigm SLAPP is a suit filed by a large developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to the developers' plans," SLAPPs "are by no means limited to environmental issues, nor are the defendants necessarily local organizations with limited resources." *Hupp v. Freedom Comm*[*unications, Inc.*], 163 Cal. Rptr. 3d 919, 922 (Cal. Ct. App. 2013). "[W]hile SLAPP suits 'masquerade as ordinary lawsuits' the conceptual features which reveal them as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Id*.

42 Pa. C.S. §8340.11, Uniform Law Comment.

(N.T. __). The records were placed outside for recycling in error. After she viewed video footage showing Coyne going through the boxes, the City consulted with "breach counsel" and engaged a third-party investigator. N.T. 13. The third-party investigator made recommendations on record handling, which the City has adopted.

Eskra testified that the City desired to protect the confidentiality of the personnel records copied by Coyne. She explained that the City's ordinance "prohibits and forbids the scavenging of recyclables placed on the curb." N.T. 23. Further, the ordinance makes any items placed outside for recycling the property of the City.

Eskra testified that, on April 30, 2024, her office notified Coyne by letter that he may not disclose any of the information found in the files; he did not acknowledge receiving the letter. N.T. 24-25, 32. Once Coyne disclosed the identity of one former employee at the City Council meeting, the City filed its action to prevent any further disclosures. She explained that the City did not seek to prevent Coyne from publicly discussing the incident or his feelings about it.

Coyne presented no testimony or evidence. In his closing argument, Coyne asserted that the United States Supreme Court has established that the trash and recyclables placed out for collection are stripped of any privacy rights, and, thus, the City's ordinance protecting recyclables cannot "supersede the powers of the United States Supreme Court." N.T. 44. Coyne argued that under the plain view doctrine, "anything open and exposed to the public has no privacy protections," which applied to the boxes in question. N.T. 45. In any case, the City has no privacy interest at stake. Because Coyne and his media company are not covered by HIPAA, its privacy requirements had no application. Finally, he argued that the names of employees, current or former, are public information.

5

Coyne explained that his motion to strike the City's complaint was based upon the Expression Protection Act, which protects First Amendment rights. The injunction was intended to hush him from speaking at a City Council meeting. As a member of the press, Coyne argued that he is allowed to report on the matter. In any case, the disclosure of the names of public employees is not a disclosure of personal and protected information. N.T. 46.

In its closing argument, the City acknowledged that the personnel records were inadvertently placed outside for recycling. After Coyne informed City Council that it was his intention to continue to release the names contained in the personnel files, the City sought an injunction to prevent further disclosure of any information in files, including names.

Concluding that the City had made its case, the trial court entered a permanent injunction. As to Coyne's motion to strike, the trial court explained that the Expression Protection Act was inapposite because it excludes claims

(1) Against a government unit or an employee or agent of a government unit acting in an official capacity.

(2) *By a government unit or an employee or agent of a government unit acting in an official capacity to enforce a law, regulation or ordinance.*

. . . .

42 Pa. C.S. §8340.14(b) (emphasis added). Here, the City was acting in its official capacity to enforce an ordinance that prohibits and forbids the scavenging of recyclables placed on the curb. CITY ORDINANCE §400-30.[4]

---

[4] Pennsylvania's anti-SLAPP statute, *i.e.*, the Expression Protection Act, authorizes a pre-trial motion to dismiss a cause of action based upon a claim of public expression immunity. However, that provision of the statute was not in effect at the time and, thus, did not support the motion to strike. Trial Court Op., 11/7/2024, at 5.

The trial court rejected Coyne's contention that the City is trying to "hush" him at City Council meetings because the injunction had no impact on Coyne's appearance at City Council meetings, where he was free to "comment about the City's ineptitude and harangue the City over its handling of confidential personnel information as if it was old newspapers and magazines." Trial Court Op., 11/7/2024 at 6.

Finally, the trial court rejected Coyne's argument that personnel files had been abandoned, noting that the City's ordinance established the ownership status of recycling materials. In any case, the affected employees did not abandon their privacy interests in their respective personnel files.

Coyne appealed the trial court's order to this Court.

**Appeal**

On appeal,[5] Coyne raises seven issues:

1. Whether the [trial court] erred in holding a local ordinance valid when there is a contrary U.S. Supreme Court decision[.]

2. Whether the [trial court] erred in holding that the Plain View Doctrine does not remove expectations of privacy[.]

3. Whether the [trial court] erred in holding that the ANTI-SLAPP law was invalid citing protections on Claims related to government immunity[.]

4. Whether the [trial court] erred in holding that the names of public employees or former, devoid of any other protected information, standing alone, is protected information.

5. Whether the [trial court] erred in holding that the City [] had standing to pursue a claim of privacy, when [it was] not the

---

[5] When reviewing the grant of a permanent injunction, our review determines whether the trial court committed an error of law, and as such, "our standard of review is *de novo*, and our scope of review is plenary." *City of Philadelphia v. Armstrong*, 271 A.3d 555, 560-61 (Pa. Cmwlth. 2022) (quoting *Kuznik v. Westmoreland County Board of Commissioners*, 902 A.2d 476, 489 (Pa. 2006)).

part[y] exposed, but the part[y] who exposed the information by negligence[.]

6. Whether the [trial court] erred in holding that the press should not be able to use a name of a public employee (past or present) in relation to a story of public interest, under permanent injunction, because it may cause "embarrassment"[.]

7. Whether the [trial court] erred in not allowing [Coyne's] request for discovery.

Coyne Brief at 7-8. For purposes of this opinion, we will combine issues four and six and restate the issues on appeal as follows:

1. Whether the City's recycling ordinance is void because it is superseded by the United States Constitution and decisions interpreting the Constitution.

2. Whether any expectation of privacy exists in the contents of an uncovered box on a public sidewalk.

3. Whether the City's request for injunction is a SLAPP suit.

4. Whether the names of the City's former employees are private information.

5. Whether the City has standing to pursue a privacy claim in the personnel files.

6. Whether discovery should have been conducted prior to the trial court deciding the City's motion for permanent injunction.

**Applicable Law**

"An injunction is a court order that can prohibit or command virtually any type of action." *Big Bass Lake Community Association v. Warren*, 950 A.2d 1137, 1144 (Pa. Cmwlth. 2008). "It is an extraordinary remedy that should be issued with caution and 'only where the rights and equity of the plaintiff are clear and free from doubt, and where the harm to be remedied is great and irreparable.'" *Id*. (quoting 15 STANDARD PENNSYLVANIA PRACTICE 2d, §83:2 (2005)). The required

8

elements of injunctive relief are: (1) a clear right to relief; (2) the need to avoid an injury that cannot be compensated in damages; and (3) a finding that greater injury will result from refusing, rather than granting, the relief requested. *Big Bass Lake Community Association*, 950 A.2d at 1144. A court may issue a final injunction "if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." *City of Philadelphia*, 271 A.3d at 560 (quoting *Buffalo Township v. Jones*, 813 A.2d 659, 663-64 (Pa. 2003)). Even where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury. *Big Bass Lake Community Association*, 950 A.2d at 1144-45.

## Analysis
### I. Supremacy Clause

In his first issue, Coyne argues that the Supremacy Clause of the United States Constitution supersedes the City's recycling ordinance, which purported to preserve the City's property interest in recycled materials. The City responds that Coyne did not challenge the validity of the ordinance enacted by the City at the hearing before the trial court.

A party waives an issue by failing to raise it at the earliest possible opportunity. *See Dehus v. Unemployment Compensation Board of Review*, 545 A.2d 434, 436 (Pa. Cmwlth. 1988). "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In its Pa.R.A.P. 1925(a) opinion, the trial court stated that Coyne "did not challenge the validity of the ordinance enacted by the City [], thus, there was no issue presented regarding the validity of the ordinance." Trial Court Pa.R.A.P. 1925(a) Op. at 2. Coyne eventually raised the validity of the ordinance in his Pa.R.A.P. 1925(b)[6] statement, but that did not preserve the issue. As the Pennsylvania Supreme Court has stated:

---

[6] It states:

9

> [I]n general, a [Pa.R.A.P.] 1925(b) statement cannot resurrect an otherwise untimely claim or objection. *See Commonwealth v. DeLoach*, 714 A.2d 483, 486 n.8 (Pa. [Cmwlth.] 1998) (holding that issues not raised at trial cannot be raised in a 1925(b) statement); *Rutledge v. Depart*[*ment*] *of Trans*[*portation*], [] 508 A.2d 1306, 1306–07 ([Pa. Cmwlth.] 1986) (same). Because issues not raised in the lower court are waived and cannot be raised for the first time on appeal, a 1925(b) statement can therefore never be used to raise a claim in the first instance. Pa.R.A.P. 302.[]

*Steiner v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009) (footnote omitted).

Even so, Coyne's argument lacks merit. The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures by the government that violate a reasonable expectation of privacy. U.S. CONST. amend. IV.[7] The Fourth Amendment generally requires a warrant before police can conduct a search of a person's property. *Commonwealth v. Williams*, 342 A.3d 742, 765 (Pa. Super. 2025). To be sure, the Fourth Amendment "allows officers to conduct warrantless searches and seizures of garbage discarded in areas subject to public inspection" because there is no reasonable expectation of privacy in trash left for collection by the owner of that property. *Id*. at 766.

---

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa.R.A.P. 1925(b).

[7] It states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

However, Coyne is neither an officer of the law nor an individual with a property interest in the personnel files. Accordingly, the Fourth Amendment has no application. *Commonwealth v. Shaffer*, 209 A.3d 957, 971 (Pa. 2019) (holding that the prohibitions of the Fourth Amendment do not apply to searches and seizures conducted by private individuals).

We reject Coyne's first issue on appeal as waived.

## II. Plain View Doctrine

In his second issue, Coyne invokes the plain view doctrine, which provides "[i]f an object is left open and exposed in a public or even a non[-]public area that is visible from a public area or easement, the items exposed have no expectation of privacy." Coyne Brief at 14. Coyne argues that the owner of the uncovered box placed next to a public sidewalk has "no expectation of privacy." *Id*. at 15. The City responds that the plain view doctrine pertains to the Fourth Amendment, which is inapplicable in this case because Coyne is not a law enforcement officer. City Brief at 10. We agree.

As already explained, the Fourth Amendment to the United States Constitution and article I, section 8 of the Pennsylvania Constitution[8] guarantee individuals freedom from unreasonable searches and seizures by the government. *Commonwealth v. Hightower*, 340 A.3d 1015, 1023 (Pa. Super. 2025). The plain view doctrine allows police to seize property without a warrant where "(1) the police

---

[8] PA. CONST. art. I, §8. It states:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

*Id*.

11

view the item from a lawful vantage point; (2) the incriminating nature of the item is immediately apparent; and (3) the police have a lawful right of access to the item." *Commonwealth v. Saunders*, 326 A.3d 888, 897 (Pa. 2024).

Coyne is not a police officer, and the plain view doctrine did not allow Coyne to scavenge the City's property in violation of the City's ordinance.

### III. Anti-SLAPP Prohibition

In his third issue, Coyne argues that the City's action was a "SLAPP" lawsuit prohibited by Pennsylvania law. The City responds that it is seeking to enforce a City ordinance prohibiting the scavenging of recyclables, to which the Expression Protection Act is inapplicable. Further, the City argues that it is "not attempting to silence [Coyne] from speaking out on matters of public interest or concern[;]" it is seeking to "prevent [Coyne] from further divulging or disseminating confidential personnel information of former employees[.]" City Brief at 12.

By way of background, anti-SLAPP laws are:

generally designed to lower or eliminate the costs and other burdens of defending against SLAPPs, including, for example, by providing mechanisms to obtain dismissal of meritless lawsuits at the earliest stages of litigation, automatically staying discovery, permitting defendants to immediately appeal a trial court's denial of an anti-SLAPP motion, and permitting defendants who win their anti-SLAPP motions to recover attorney fees and costs.

Michael Berry and Kaitlin M. Gurney, *Pennsylvania Joins States Enacting Tough Anti-SLAPP Protections: The New Uniform Public Expression Protection Act*, 96 PENNSYLVANIA BAR ASSOCIATION QUARTERLY 1, 2-3 (2025). Pennsylvania enacted the Expression Protection Act because of "a disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression[,]" and for the reason that "[i]t is in the public interest to encourage continued participation in

12

matters of public significance[, which] participation should not be chilled through abuse of the judicial process." 42 Pa. C.S. §8340.12(1)-(2). The Expression Protection Act "grants immunity to those groups or parties exercising the rights to protected public expression" and thus provides that "a cause of action based on protected public expression" is eligible for immunity from civil liability. 42 Pa. C.S. §§8340.12(3)(i), 8340.15. However, the Expression Protection Act does not apply to claims asserted in a civil action "[b]y a government unit or an employee or agent of the government unit acting in an official capacity to enforce a law, regulation or ordinance." 42 Pa. C.S. §8340.14(b)(2).

Here, the City filed an action to enforce its ordinance on recycling, which prohibits the scavenging of recyclables. Coyne admits that he went through the boxes, labeled "Shred 2033," and he took pictures of the files inside these boxes. The City's suit seeks only to prevent Coyne from disclosing any information contained in the personnel files placed in those boxes, which is City property. The City does not seek to prevent Coyne from attending any City Council meetings or speaking out about an alleged data breach or on any matters of public interest.

The trial court did not err in denying Coyne's request to dismiss the City's petition.

### IV. Disclosure of Former Employee Names

In his fourth issue, Coyne argues that the names and salaries of City employees constitute public information and, thus, he cannot be restrained from disclosing a City employee's name. Coyne further argues that the First Amendment to the United States Constitution[9] protects freedom of the press. Any embarrassment

---

[9] U.S. CONST. amend. I. It states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the

to the individuals whose names would be released "does not minimize the protection afforded" to the press. Coyne Brief at 23 (quoting *Salazar v. Golden State Warriors*, No. C-99-4825 (N.D. Cal. February 29, 2000)).[10] The City responds that every former employee has the right "to control access to, or the dissemination of, personal information about himself or herself." City Brief at 13 (quoting *Governor's Office of Administration v. Campbell*, 202 A.3d 890, 893 (Pa. Cmwlth. 2019)).

In Pennsylvania, an individual's right to informational privacy is guaranteed in article 1, section 1 of our Constitution, which includes "the interest in avoiding disclosure of personal matters." *Pennsylvania State Education Association v. Department of Community and Economic Development*, 148 A.3d 142, 150 (Pa. 2016) (quoting *In re June 1979 Allegheny County Investigating Grand Jury*, 415 A.2d 73, 77 (Pa. 1980)). Similarly, the United States Supreme Court has recognized "specific rights to informational privacy, including an individual's 'interest in avoiding disclosure of personal matters' and an 'independence in making certain kinds of important decisions.'" *Id*. Federal statutes provide specific privacy protections for certain government records. For example, the Privacy Act prohibits government agencies from disclosing any record, "except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains[.]" 5 U.S.C. §552a(b).[11]

---

press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *Id*.

[10] In *Salazar*, the plaintiff was terminated due to alleged drug use. The employer's private investigator videotaped the plaintiff in the parking lot at a wedding reception and arriving and leaving his home. The plaintiff filed suit against the employer, alleging that the employer invaded his privacy by videotaping him. The court held that an invasion of the plaintiff's privacy did not occur because he was photographed only while in public view.

[11] The term "record" is defined as

14

Pennsylvania's Right-to-Know Law[12] creates access to certain public records, such as the names of government employees. Coyne, however, did not obtain the names of the former City employees through a Right-to-Know Law request or other lawful means. Rather, he obtained the names by scavenging through boxes placed outside for recycling, in violation of the City's ordinance. Coyne was not entitled to view the information inside personnel files, any more than he was entitled to walk into the City's personnel office and demand to see personnel records. *See generally* Act of November 26, 1978, P.L. 1212, *as amended*, 43 P.S. §§1321-1324 (known as the "Inspection of Employment Records Law").[13]

Coyne claims, however, that as a member of the press, he is entitled to disclose information of interest to the public, even if illegally obtained. In support, he cites *New York Times Company v. United States*, 403 U.S. 713 (1971) (*per curiam*) (*New York Times*).

In that case, the United States sought to enjoin two newspapers from publishing classified information that had been "leaked" to the press. Affirming the judgment of the Court of Appeals for the District of Columbia Circuit in *United States v. Washington Post Company*, 446 F.2d 1327 (D.C. Cir. 1971), the Supreme Court held that the government did not meet its burden of proof. Notably, the Court

---

any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or *employment history and that contains his name*, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph[.]

5 U.S.C. §552a(a)(4) (emphasis added).

[12] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[13] This law "protect[s] employment records by creating an expectation that only those who have a legitimate need, or those explicitly authorized by an employee, will access the employee's records[.]" *Campbell*, 202 A.3d at 895.

15

of Appeals observed that the information had already been published in several newspapers, which raised "substantial doubt that effective relief of the kind sought by the government can be provided by the judiciary." *Id.* at 1329. *New York Times* does not stand for the broad proposition that illegally obtained information can be disclosed by the press.

Even so, *New York Times* does not support Coyne. First, the City ordinance forbids persons scavenging through the recyclables, and Coyne did not challenge the validity of the ordinance. Second, the information subject to the trial court injunction has not been widely disseminated, rendering injunctive relief futile, as in *New York Times*. Third, Coyne is not in any way restrained from alerting the public to a matter of public interest, *i.e.*, the City's negligent handling of its personnel files. *New York Times* is inapposite.

The injunction prevents Coyne from revealing any information he obtained illegally. To allow Coyne to reveal some information, such as names and salaries, would be unworkable. It would create the opportunity for lapses that could lead to disclosures that even Coyne acknowledges to be confidential, such as social security numbers. We reject this issue on appeal.

### V. City's Standing

In his fifth issue, Coyne argues that the City lacked standing to seek an injunction because it does not have a substantial, direct and immediate interest in the personal information of its former employees. The City responds that Coyne did not raise the issue of standing before the trial court and, thus, it is waived.

Standing is a threshold requirement that must be established to a judicial disposition of a dispute. *Previte v. Erie County Board of Elections*, 320 A.3d 908, 912 (Pa. Cmwlth. 2024). Standing requires a party to have an interest "that is

16

substantial, direct, and immediate." *Id*. A challenge to a party's standing to sue is a "'prudential' concern that can be waived in the event an opposing party does not raise it at the earliest possible juncture." *Id*. at 913 (citation omitted).

Coyne did not raise the issue of the City's standing until he filed the appeal. Because Coyne did not raise this issue at the earliest possible point, *i.e.*, before the trial court, Coyne waived his ability to challenge the City's standing.

## VI. Discovery

Finally, Coyne argues that the trial court erred in holding judge hearing on a permanent injunction without first allowing discovery. Coyne sought the records of statements made by Eskra; the video surveillance of the rear of the City Hall building; and information on the City's handling of personnel files.

A trial court's discovery ruling will not be disturbed on appeal, absent a clear abuse of discretion. *Young v. Estate of Young*, 138 A.3d 78, 86 (Pa. Cmwlth. 2016) ("A trial court's decision to grant or deny pre-trial discovery falls within the trial court's discretion."). The City sought to enjoin the disclosure of information from personnel files that were the property of the City, and on this matter there were no facts in dispute. Accordingly, the trial court did not abuse its discretion in denying Coyne's discovery requests.

## Conclusion

For the reasons set forth above, we affirm the permanent injunction, enjoining Coyne and his media company from disseminating, divulging and/or disclosing personal information that he obtained, unlawfully, from the City's recycling bins in April of 2024.

_____
MARY HANNAH LEAVITT, President Judge Emerita

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The City of Scranton | : | |
| | : | |
| v. | : | No. 1670 C.D. 2024 |
| | : | |
| Thomas Coyne, a/k/a Tom | : | |
| Coyne & AFG Media, | : | |
| Appellant | : | |

# **O R D E R**

AND NOW, this 24th day of March, 2026, the order of the Court of Common Pleas of Lackawanna County, dated November 7, 2024, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita